Susan WINTERS and Stephen Winters, Plaintiffs,

v.

ADAP, INC., Auto Palace, Autozone Inc., and Rite Aid Corp., Defendants.

No. CIV. A. 98–30153–FHF.

United States District Court, D. Massachusetts.

Nov. 23, 1999.

Judith A. Cross, Donahue & Cross, P.C., Cheryl R. Smith, Donahue and Cross, P.C., Springfield, MA, for Susan Winters, Stephen Winters, Plaintiffs.

Richard Paster, Paster, Rice & Castleman, Quincy, MA, S. Mark Klyza, Carmen M. Shindala, Samuel Zurik, III, The Kullman Firm, Lynda Marshall Ferra, New Orleans, LA, for ADAP, Inc., Auto Palace, Autozone, Inc., Rite Aid Corp., Defendants.

## MEMORANDUM AND ORDER
FREEDMAN, Senior District Judge.

### I. INTRODUCTION

Susan Winters's ("plaintiff")[1] complaint alleges that ADAP, Inc., Auto Palace, Au-tozone Inc., and Rite Aid Corp. (collectively "defendants") discriminated against her in employment. It alleges gender discrimination in Count I, sexual harassment in Count II, handicap discrimination in Count III, and age discrimination in Count IV; all in violation of Mass. Gen. Laws ch. 151B. In Count V of the complaint, plaintiff's husband, Stephen Winters, claims damages for loss of consortium. Defendants respond in their motion for summary judgment that Winters's failure to timely file her claims with the Massachusetts Commission Against Discrimination ("MCAD") within 180 days from the time of the alleged violations precludes most of her claims and that any remaining timely claims lack merit. Defendant Rite Aid, in a separate motion for summary judgment, argues that Winters's failure to adequately name it in her MCAD charge excuses it from this action. The Court now considers defendants' motions for summary judgment.

### II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it is one which "might affect the outcome of the suit under the governing law." *See Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir.), *cert. denied*, 511 U.S. 1126, 114 S.Ct. 2133, 128 L.Ed.2d 863 (1994). Moreover, summary judgment may be appropriate "[e]ven in cases where elusive concepts

---

**1.** As Stephen Winters, Susan's husband, advances claims only for loss of consortium, the Court's reference to Winters or plaintiff in this Memorandum and Order refers only to Susan Winters, unless specifically noted otherwise.

such as motive or intent are at issue ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

"[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir.) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993)), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). In deciding a motion for summary judgment, the Court "state[s] the facts in the light most favorable to the nonmoving party, indulging all inferences in that party's favor." *Dykes v. Depuy, Inc.*, 140 F.3d 31, 33 (1st Cir.1998).

### III. FACTUAL AND PROCEDURAL HISTORY

ADAP, a subsidiary of Rite Aid Corp., hired Winters, then forty years old, as a management trainee in its Chicopee, Massachusetts store in August 1988. By June of 1989, she managed the ADAP store in Chicopee. Approximately nine months later, however, Mark Gerhard, Winters's district manager, transferred her to work at another store as an assistant manager and replaced her with a younger male manager. Over the next seven to eight years, ADAP transferred Winters between several stores where she worked under numerous male managers, most of whom were under forty years of age and several of whom lasted only a few months. During this time, ADAP passed Winters over for promotions approximately ten times.

Winters also endured sexually offensive comments and actions by her co-workers and superiors, including air fresheners with pictures of nude women displayed at counters and in restrooms, suggestive swimsuit calendars used to mark requested days off, and disparate cleaning chores for male and female employees. Despite her protests and complaints about the comments, air fresheners, cleaning, and calendars to management and superiors, the practices continued unabated.

To make matters worse, Winters's doctors diagnosed her with Type 2 Diabetes in 1994. She informed defendants via a doctor's note of her diagnosis and that she required scheduled eating breaks. ADAP denied Winters's request for scheduled breaks, and allegedly did not allow her to eat when she needed to on several occasions. As a result of this request for scheduled breaks, Winters was also the target of several unprofessional references and e-mails.

Winters filed charges of discrimination with the MCAD on September 13, 1996, naming "ADAP, Inc., AUTO PALACE, a division of Rite Aid Corporation and its managerial staff ..." as defendants, and stating that "[t]he corporation knew of the sexually harassing and discriminatory conduct based on my sex, age and handicap and did nothing to stop it."

### IV. DISCUSSION

#### A. *Defendant Rite Aid's Notice*

Defendant Rite Aid seeks excusal from this case on grounds that Winters failed to provide it with adequate notice in her MCAD charge to justify the present suit. Rite Aid contends that Winters's MCAD charge only mentioned Rite Aid within its identification of ADAP, as "a division of Rite Aid," and that it had neither notice of the action nor an opportunity to respond or be represented at the MCAD proceedings.

■ While, generally, a plaintiff must name a party in her MCAD charge in order to support a later lawsuit,

> whether a party has been appropriately identified as a wrongdoer in a charge filed with the MCAD so as to support a subsequent civil action against that party is a matter to be determined from a

reading of the charge as a whole. If the charge put that party's conduct at issue and if the party was on notice of the charge and had an opportunity to participate in the MCAD proceeding, then the party appropriately may be named as a defendant in a later civil complaint alleging a violation of Chapter 151B.

*Chatman v. Gentle Dental Center of Waltham,* 973 F.Supp. 228, 234 (D.Mass.1997); *see Chapin v. University of Massachusetts at Lowell,* 977 F.Supp. 72, 76–77 (D.Mass. 1997).

In this case, Rite Aid may be a separate corporate entity from ADAP, but that alone provides it no shelter. Because Rite Aid was a parent company of ADAP, Rite Aid's counsel defended ADAP; in other words, Rite Aid and ADAP's counsel were one and the same. Rite Aid's counsel received all of plaintiff's pleadings, knew the nature of her allegations, attended MCAD proceedings, and presented defenses and arguments that represented the interests of both Rite Aid and ADAP.

As a result, the Court finds that Rite Aid received adequate notice for the purposes of retaining it as a defendant in this proceeding. Accordingly, the Court declines Rite Aid's request to dismiss it from the instant action, and concludes that the plaintiff may pursue her claims against defendant Rite Aid.

### B. *Plaintiff's Untimely MCAD Charges*

Before analyzing the merits of Winters's discrimination claims the Court evaluates whether she filed her MCAD charge too late to preserve some of her claims. Defendants seek summary judgment on many of plaintiff's Mass. Gen. Laws ch. 151B claims for untimeliness. In particular, defendants argue that Winters failed to comply with Mass. Gen. Laws ch. 151B, § 5 by including in her complaint claims that occurred before March 1996, in other words, more than 180 days before she filed her September 13, 1996 MCAD charge.

Although Mass. Gen. Laws ch. 151B, § 5 requires a plaintiff to file charges of discrimination within 180 days of the conduct supporting the claims, the plaintiff may include claims for actions outside of the limitations period if they form part of a continuing violation. *See Lawton v. State Mut. Life Assur. Co. of America,* 101 F.3d 218, 221 (1st Cir.1996). Continuing violations can take either of two forms: serial violations or systemic violations. *See id.* at 221–22.

#### 1. Serial Continuing Violations

Serial violations arise when several separate discriminatory acts develop from the same discriminatory animus, and at least one independently actionable claim occurred within the required time period. *See Lawton,* 101 F.3d at 221. To establish a serial violation, the claims must meet two requirements. First, the timely claim must link to the untimely ones by either similarity, repetition, or continuity. *See Provencher v. CVS Pharmacy, Div. of Melville Corp.,* 145 F.3d 5, 14–15 (1st Cir. 1998). Second, the plaintiff must establish that she neither knew nor should have known that the untimely actions constituted discrimination. *See id.* The purpose of this second prong is to "permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred," but not to expand the limitations period itself. *Id.* at 15 (quoting *Speer v. Rand McNally & Co.,* 123 F.3d 658, 663 (7th Cir.1997)); *see also Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1166 (7th Cir.1996) (encourage plaintiffs to bring claims when conduct supports viable rather than premature case).

##### a. Gender and Age

In this case, Winters alleges in Counts I and IV at least three failures to promote her based on gender or age after the March 1996 statutory time limit: one in April 1996, one in September 1997, and one in January 1998. She also alleges

several untimely failures to promote her based on gender or age prior to March 1996. The type of timely alleged offenses—failure to promote based on gender or age—is of the same type as that of the untimely ones—failure to promote based on gender or age. As a result, the Court concludes that plaintiff establishes the first prong of a serial violation, the similarity link.

Though Winters may have suspected that discriminatory animus prompted defendants' failure to promote her, she must have had more than mere suspicion of discriminatory animus to be charged with notice. Here, Winters claims that she originally did not equate the transfers and promotion denials with her age or gender. In addition, the Court views statements her superiors made about the transfers and promotion denials ambiguous and subject to multiple potential inferences. While individually these statements may have given Winters a suspicion of gender or age bias, none alone could support a valid bias claim. When viewed together, however, a reasonable jury could find a clear pattern of age or gender bias in defendants' failure to promote the plaintiff spanning her untimely and timely claims. In short, the Court finds that Winters satisfies the second prong of serial violations because she neither knew nor should have known that she had a viable claim of age or gender discrimination prior to filing her charge with the MCAD.

Consequently, the Court concludes that plaintiff alleges a serial continuing violation of gender or age discrimination and that her claims arising before March 1996, under Counts I and IV, are timely. Holding otherwise would not only have required Winters to file a premature case doomed to failure, but also would specifically contradict the entire rationale behind the continuing violation exception to the timeliness rule. *See Provencher,* 145 F.3d at 15 (citing *Galloway,* 78 F.3d at 1166).

### b. Sexual Harassment

Plaintiff's sexual harassment claims in Count II, however, fail to meet the serial violation requirements as her timely claims fail to allege actionable sexual harassment. The only two harassing conditions plaintiff alleges timely arise from the defendants' sale of air fresheners portraying nude women and a supervisor's alleged affair with a co-worker.

■ To prevail on a sexual harassment claim, plaintiff must show the defendants' actions to be "sufficiently severe or pervasive to ... create an abusive working environment." *Morrison v. Carleton Woolen Mills, Inc.,* 108 F.3d 429, 437 (1st Cir.1997) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *see College–Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination,* 400 Mass. 156, 508 N.E.2d 587, 591 (1987). The conduct in question must be subjectively offensive to the individual plaintiff as well as to a reasonable person. *See Harris,* 510 U.S. at 21, 114 S.Ct. 367.

■ The defendants' sale of air fresheners portraying nude women failed to create a sufficiently severe or pervasive sexually harassing atmosphere. Significantly, plaintiff does not contend that after March 1996 the defendants displayed the air fresheners other than on the store shelves, or that any co-workers used the air fresheners in a sexually offensive manner. Moreover, plaintiff does not cite, and the Court has not found, any legal precedent to suggest that the mere sale of a product by a defendant, as opposed to its display or use in a sexual manner, may create a hostile work environment. The Court concludes as a matter of law that defendants' sale of the air fresheners, without more, fails to establish a sufficiently severe or pervasive sexually charged atmosphere to interfere with a reasonable person's work performance.

The Court agrees with Winters that a supervisor's affair with a co-worker may strain communications between nonpartici-

pating employees and create an uncomfortable atmosphere. Plaintiff, however, fails to provide legal support for her claim that sexual relationships between fellow employees, without any sexually related actions directed specifically at her, can give rise to a claim for sexual harassment of an uninvolved plaintiff. *Cf.* EEOC, Sexual harassment, 29 C.F.R. § 1604.11(a) (1999) (defining sexual harassment as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... when ... (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.").[2] The affair between Winters's co-workers and any associated sexual banter was directed solely between the participants, not even allegedly towards Winters. Consequently, the Court also concludes that no reasonable jury could find that the alleged affair created a sufficiently severe or pervasive sexually harassing atmosphere.

Because both of plaintiff's timely allegations of sexual harassment are insufficient as a matter of law to create an actionable sexual harassment claim, even when considered together, plaintiff cannot establish serial continuing violations based on sexual harassment to preserve her untimely allegations. *See Provencher,* 145 F.3d at 14.

2. Systemic Continuing Violations

 Systemic continuing violations arise when an offending policy or practice continues into the statutory time period. *See Lawton,* 101 F.3d at 222. A plaintiff need not show a specific identifiable discriminatory act within the limitations period, only that the general practice or policy continued into the limitations period. *See Provencher,* 145 F.3d 5, 14 (citing *Muniz–Cabrero v. Ruiz,* 23 F.3d 607, 610 (1st Cir.1994)). The plaintiff must also show that she neither knew nor should have

known that she had a viable claim prior to the limitations period. *See id.*

 Here, Winters produces deposition testimony of Bruce White, Winters's district manager, admitting that he promoted no women to management positions during his tenure as district manager. Winters also produces evidence of statements by management that women did not make credible managers in the auto parts business. Without the historical perspective, however, Winters could not have known of defendants' discriminatory policy even if she might have been suspicious of gender bias. From the evidence Winters provides now, a reasonable jury could infer at least a district-wide practice or policy of not promoting women to management positions which continued into the limitations period. Because Winters produces evidence of a policy or practice that she neither knew, nor should have known, constituted valid claims of gender discrimination under Mass. Gen. Laws ch. 151B, plaintiff makes out a claim for systemic continuing gender discrimination. *Cf. Provencher,* 145 F.3d at 14–15.

 Winters fails, however, to produce evidence of either a system wide policy or practice of age discrimination or sexual harassment. She produces only evidence of alleged violations directly related to her, as opposed to older women employed by defendants generally. Consequently, Winters fails to establish systemic violations of sexual harassment or age discrimination. *See Provencher,* 145 F.3d at 14.

In sum, because Winters fails to produce any evidence of either systemic or serial continuing violations of sexual harassment, defendants are entitled to judgment as a matter of law on Count II. Because she produces evidence of serial continuing violations based on gender and age discrimination, as well as systemic continuing violations based on gender discrimination,

---

**2.** The Court notes briefly that the facts of this case do not suggest a separate form of sex discrimination, where the co-worker's affair

benefitted her at Winters's expense. *See* 29 C.F.R. § 1604.11(g).

however, the Court now turns to the merits of Counts I and IV.

### C. Gender and Age Discrimination

■ The Court evaluates the merits of Winters's claims of age and gender discrimination in Counts I and IV according to a familiar discrimination law framework. The plaintiff must support her Mass. Gen. Laws ch. 151B age and gender discrimination claims by navigating the classic *McDonnell Douglas* burden-shifting paradigm as set out in *Wheelock College v. Massachusetts Commission Against Discrimination*, 371 Mass. 130, 355 N.E.2d 309, 314–15 (1976); *see Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 646 N.E.2d 111, 115–17 (1995). At the prima facie stage, the plaintiff bears the non-onerous burden of producing admissible evidence sufficient to support a legal conclusion of discrimination. *See Wheelock College*, 355 N.E.2d at 314. If plaintiff produces evidence that she was a member of a protected class, qualified for her position, subjected to negative employment decisions despite her qualifications, and replaced by a male or younger employee of similar qualifications, then a presumption of discrimination arises. *See Blare*, 646 N.E.2d at 115. In response to a prima facie case, defendants must produce evidence of a legitimate, non-discriminatory reason for the plaintiff's removal that counters the presumption of discrimination. *See id.* Finally, plaintiff must prove by a preponderance of the evidence that the defendant's reason for removal was pretextual under Mass. Gen. Laws ch. 151B. *See id.*

In this case, the parties do not dispute that Winters has established a prima facie case of gender or age discrimination. Defendants do, however, advance a legitimate non-discriminatory reason for denying Winters a promotion—that the other applicants were more qualified than she.

■ Plaintiff counters with evidence of pretext. She produces deposition testimony from Marshall Mudge stating that Winters was more qualified than the managers that defendants hired instead of her, and that defendants' management felt and stated that women did not make credible managers in the auto parts business. Plaintiff also produces evidence that in June 1996, the West Springfield store, where she served as sole acting manager, twice received company-wide recognition for increased sales percentages. In addition, she provides deposition testimony from Larry Griffin and Michelle Haska of discriminatory statements made by Bruce White, Winters's district manager and the reputed decision-maker at the time of her promotion denials.

Plaintiff's age discrimination evidence consists of evidence that defendants denied her management training given to a younger woman and superiors' remarks allowing an inference of age bias. She also offers that in addition to being male, the vast majority of managers defendants hired in her stead were under the age of forty.

From this evidence, a reasonable jury could find that the reasons advanced by defendants for not promoting Winters were pretextual, and moreover, that the real reason for defendants' actions stemmed from either age or gender bias. In sum, plaintiff presents a disputed issue of material fact precluding summary judgment on her claims of gender and age discrimination in Counts I and IV respectively. *See Hayes*, 8 F.3d at 90.

### D. Disability Discrimination

■ Count III of plaintiff's complaint contends that defendants discriminated against her in violation of Mass. Gen. Laws ch. 151B by failing to provide her with scheduled eating breaks to control her diabetes. In Massachusetts, an employer must provide reasonable accommodation to qualified handicapped employees unless the company establishes that the accommodation would "impose undue hardship." Mass. Gen. Laws ch. 151B,

§ 4(16); *see also* 42 U.S.C. § 12112(b)(5)(A). The plaintiff need not show discriminatory animus, only the employer's knowledge of the employee's need for reasonable accommodation, and its failure to provide it. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 263–64 (1st Cir.1999). To survive summary judgment on a failure to accommodate claim, plaintiff must provide evidence that: (1) she is a qualified individual with a disability within the applicable statute; (2) that the statute applies to the employer; (3) that despite knowing the employee's limitations, the employer failed to provide accommodation; and that (4) this failure affected the terms, conditions, or privileges of the employee's employment. *See id.* at 264–65.

▮ Here, plaintiff provided defendants with a doctor's note stating that she had diabetes and that to prevent hypoglycemia, she required scheduled eating times, rather than arbitrary break times. Plaintiff testified that defendants failed to accommodate her diabetes by failing to provide her with the scheduled breaks and, occasionally, denying her the ability to eat even when she informed them of her need to eat. Because Winters provides evidence that defendants did not provide her with the scheduled breaks required by her doctor, she raises a disputed issue of material fact and avoids summary judgment on Count III. *See id.*

E. *Stephen Winters's Loss of Consortium Claim*

▮ Plaintiffs seeking recovery for the loss of a spouse's consortium in Massachusetts must rely entirely upon a valid tort claim. *See Reidy v. Travelers Ins. Co.*, 928 F.Supp. 98, 110 (D.Mass.1996), *aff'd* 107 F.3d 1, *cert. denied*, 522 U.S. 809, 118 S.Ct. 50, 139 L.Ed.2d 16 (1997) (citing *Sena v. Commonwealth*, 417 Mass. 250, 629 N.E.2d 986, 994 (1994)). Because Stephen Winters's claim under Mass. Gen. Laws ch. 151B is statutory in nature and does not sound in tort, it provides no basis to recover loss of consortium damages. *See Pollini v. Raytheon Co.*, NO. 97–CV–12229 MEL, 1999 WL 681675, at *5 (D.Mass. July 14, 1999). As a result, the Court concludes that defendants are entitled to judgment as a matter of law on Stephen Winters's loss of consortium claim in Count V.

V. CONCLUSION

For the foregoing reasons, the Court DENIES defendant Rite Aid's April 29, 1999 motion for summary judgment, DENIES defendants' motion for summary judgment on Counts I, III, and IV and GRANTS defendants' motion for summary judgment on Counts II and V.

It is So Ordered.