Karen PAQUIN, Plaintiff

v.

**MBNA MARKETING SYSTEMS, INC., MBNA America Bank, N.A., and MBNA America Corporation, Defendants**

No. 02–CV–9.

United States District Court,
D. Maine.

Nov. 22, 2002.

Timothy J. O'Brien, Robert C. Brooks, Verrill & Dana, Portland, ME, for Karen Paquin.

James R. Erwin, Ella L. Brown, Pierce, Atwood, Portland, ME, for MBNA Marketing Systems Inc., MBNA America Bank NA, MBNA America Corporation.

## ORDER

SINGAL, District Judge.

Plaintiff has brought an action against her former employer alleging hostile work environment sexual harassment and retaliation in violation of federal and state law. Presently before the Court is Defendants' Motion for Summary Judgment (Docket # 11). For the reasons discussed below, the Court GRANTS Defendants' Motion for Summary Judgment.

## I. STANDARD OF REVIEW

The Court grants a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affadavits." Fed. R.Civ.P. 56(c). The Court views the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

Plaintiff Karen Paquin ("Paquin") began working at MBNA Marketing Systems, Inc. ("MBNA") on August 3, 1999, as a telemarketer under the supervision of William Appel ("Appel"). During the time Paquin worked at MBNA, Appel's behavior made Paquin feel uncomfortable. Appel, for example, approached Paquin, who had previously been employed as a personal care attendant, and asked if she would perform "personal care" on him; responded to another representative's comment about eating by saying "I'd eat you"; showed Paquin a picture of a naked man; made references to a customer named "Harry Dick"; and jokingly told Paquin that her husband had called and wanted her to come home to watch pornographic movies with him. (*See* Pl.'s Statement of Material Facts at Vol. II ("Paquin Dep.") (Docket # 15).)

Beginning in October 1999, Paquin reported Appel's behavior to MBNA's personnel department on several different occasions. After Paquin initiated her complaints, Paquin says she was turned down for the award of "Rookie of the Month," excluded from a specialized training session, denied approval for a transfer to MBNA's Belfast office, labeled a "complainer," reprimanded and forced to move to a new seat that "isolated" her

from others on her team. (*See* Pl.'s Statement of Material Facts at Vol. II ("Paquin Dep.") (Docket # 15).)

On May 2, 2000, Paquin submitted her resignation to MBNA's personnel department. In response, MBNA offered Paquin the option of working with a new supervisor and informed her that she had until May 10, 2000, to accept or decline the offer. According to Paquin, MBNA processed her resignation papers and terminated her employment, even after she properly notified MBNA's personnel department of her decision to accept the offer and stay employed with the company. MBNA disputes this fact by saying that it did not receive notice of Paquin's decision to stay employed until after the agreed upon deadline had passed.

On November 7, 2000, Paquin filed a charge with the Maine Human Rights Commission ("MHRC"). The MHRC found that there were no reasonable grounds on which to believe any unlawful discrimination had occurred.

On January 11, 2002, Paquin filed a nine count complaint in this Court against MBNA, MBNA America Bank, N.A., and MBNA Corporation (erroneously sued as MBNA America Corporation) (collectively "Defendants"). The complaint alleged the following: unlawful discrimination and retaliation in violation of the Maine Human Rights Act (Counts I and III, respectively); unlawful discrimination and retaliation in violation of Title VII (Count II and IV, respectively); negligent supervision (Count V); negligent retention (Count VI); negligent training (Count VII); punitive damages (Count VIII); and unlawful withholding of wages (Count IX). In a previous order, the Court granted Defendants' motion to dismiss Counts V, VI and VII. Presently before the Court is Defendants' motion for summary judgment as to Counts I, II, III, IV and IX. The Court first discusses Plaintiff's sexual harassment counts then moves on to consider Plaintiff's retaliation and unpaid wages counts.

## III. DISCUSSION

### A. Hostile Work Environment Sexual Harassment

#### 1. Title VII

■ Title VII of the Civil Rights Act ("Title VII") of 1964, 42 U.S.C. § 2000e *et seq.*, makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is a form of gender discrimination actionable under Title VII. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Provencher v. CVS Pharmacy, Div. of Melville Corp.,* 145 F.3d 5, 13 (1st Cir.1998).

##### a. Time Limitation

Pursuant to Title VII's administrative filing requirements, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") "within one hundred and eighty days after the alleged unlawful employment practice occurred" before filing a Title VII action in the federal district court. 42 U.S.C. § 2000e–5(e). In "deferral states" such as Maine, where the state has its own anti-discrimination laws and agency, that period is extended to 300 days. *Id.; Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 16 (1st Cir.2002).

■ Here, Plaintiff filed her administrative complaint with the MHRC and the EEOC on November 7, 2000. Thus, Defendants argue Plaintiff can recover only for events that occurred within the 300 day period after January 12, 2000. In response, Plaintiff contends the Supreme Court's recent decision in *Nat'l R.R. Pas-*

*senger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), allows her to reach back to events that occurred before January 12, 2000, because those acts comprise part of the overall hostile work environment and relate to events that occurred within the limitations period. In an effort to anchor her untimely allegations, Plaintiff alleges numerous acts that occurred within the timely filing period, including: 1) Appel's favoritism of attractive women; 2) Appel's inappropriate behavior towards various female employees on his team; 3) Appel's mistreatment of Plaintiff after she complained to MBNA about his conduct; 4) MBNA's refusal to allow Plaintiff to switch managers; 5) Appel's decision to move Plaintiff to a new seat; 6) MBNA's labeling of Plaintiff as a "complainer"; and 7) MBNA's casual dismissal of Plaintiff's complaints.

*Morgan,* however, does not stand for the proposition that *any* timely allegation can properly anchor untimely allegations. Rather, pursuant to *Morgan,* a plaintiff's untimely allegations may be considered for the purposes of determining liability only if an act *contributing* to the hostile environment claim occurs within the filing period. *Morgan,* 122 S.Ct. at 2075 (stating that an employee cannot recover for untimely acts that have no relation to the timely acts); *see also Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 395–96 (1st Cir. 2002). Here, none of the alleged anchoring acts, even if timely, constitute instances of harassing conduct sufficient to support a sexual harassment claim. Only those allegations that took place before January 12, 2000, can fairly be argued to contribute to a claim for hostile work environment sexual harassment. As such, Plaintiff's entire claim is time-barred.

### b. Prima Facie Case

■ Even assuming Plaintiff's claim is not time-barred, Plaintiff fails to allege facts severe or pervasive enough to constitute actionable hostile work environment sexual harassment. In order to prove a prima facie case of hostile work environment sexual harassment, Plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment." *Conto v. Concord Hosp., Inc.,* 265 F.3d 79, 82 (1st Cir.2001) (internal quotations and citations omitted).

■ There is no "mathematically precise test" for determining when conduct in the workplace moves beyond the "merely offensive" and enters the realm of unlawful discrimination. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Rather, the question whether the environment is objectively hostile or abusive must be answered by reference to all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367; *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (stating that the conduct must be extreme to amount to a change in the terms and conditions of employment so as not to turn Title VII into a "general civility code").

■ Plaintiff's claim encompasses, at most, five separate incidents of inappropriate behavior by Appel over a span of approximately four months between August 1999 and November 1999.[1] These allega-

---

1. Even assuming Plaintiff's claim is timely filed, the Court finds Plaintiff's claim is limited to incidents that occurred after August 1999. Despite Plaintiff's arguments to the contrary, the Court refuses to look at incidents that occurred in 1996, 1997, 1998 and early 1999, considering those incidents oc-

tions include Appel's request that Plaintiff perform "personal care" on him; his comment to another representative that he'd "eat" her; Appel's "Harry Dick" comment; his dirty movie comment; and the picture of the naked man. (*See* Pl.'s Statement of Material Facts at Vol. II ("Paquin Dep.") (Docket #15).) Even construing the evidence in the light most favorable to Plaintiff, such behavior cannot be considered so physically threatening or humiliating as to unreasonably interfere with Plaintiff's job performance. *Compare Black v. Zaring Homes, Inc.,* 104 F.3d 822, 823–24 (6th Cir.1997) (finding conduct over a four-month period insufficiently severe or pervasive where conduct involved, *inter alia,* repeated sexual jokes; sexual comments made to plaintiff while looking at her in a sexually suggestive manner, laughing at plaintiff when she mentioned the name Dr. Paul Busam (pronounced "bosom"); and telling plaintiff she was "paid great money for a woman"), *with Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1012 (8th Cir.1988) (sexual harassment established with evidence that female employees were held down so that other employees could touch their breasts and legs).

Furthermore, while Plaintiff may have felt that Appel's behavior and comments created an undignified or unpleasant working environment, five instances of inappropriate conduct fall well short of the frequency required to amount to an abusive working environment. *See e.g., Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 19 (1st Cir.2002) (finding hostile work environment where harassment was "more or less constant" from plaintiff's first day of work in April 1995, until she left in November 1996); *White v. New Hampshire Dep't of Corr.,* 221 F.3d 254, 260–61 (1st Cir.2000)

(finding hostile work environment where, *inter alia,* "disgusting comments" and conversations occurred "everyday"); *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783 (1st Cir.1990) (expressing doubt as to whether five sexual comments made over the course of a four to five week period constitutes harassment severe or pervasive enough to create a hostile work environment).

### 2. Maine Human Rights Act

■ The Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 *et seq.* (2002), provides that it is unlawful employment discrimination for an employer to discriminate against an employee on the basis of sex "with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment." 5 M.R.S.A. § 4572(1)(A) (2002). Maine courts have relied on federal case law surrounding Title VII for the purpose of construing and applying the provisions of the MHRA. *Bowen v. Dep't of Human Servs.,* 606 A.2d 1051, 1053 (Me.1992). Accordingly, the Court finds that the discussion above regarding Plaintiff's Title VII sexual harassment claim applies with equal force to Plaintiff's MHRA claim.

### B. Retaliation

#### 1. Title VII

Title VII makes it unlawful for an employer to retaliate against an employee because they have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

curred before Plaintiff even started working at MBNA. *Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 395 (1st Cir.2002) (finding that a plaintiff must subjectively perceive her work environ-

ment as hostile in order to establish a prima facie case of hostile work environment sexual harassment).

### a. Time Limitation

In contrast to hostile environment claims that involve an aggregation of hostile acts extending over a period of time, each discrete discriminatory act of retaliation "starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002). Thus, discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.*, 122 S.Ct. at 2072. A party must file a charge within 300 days of the act's occurrence or lose the ability to recover. *Id.*, 122 S.Ct. at 2071.

Plaintiff alleges a number of discrete acts as part of her retaliation claim. For instance, Plaintiff alleges: 1) MBNA labeled her as a "complainer"; 2) MBNA casually dismissed her complaints about Appel, thereby forcing her to endure an on-going hostile work environment; 3) MBNA denied Plaintiff the "Rookie of the Month" award; 4) Appel prevented her from participating in a specialized training session; 5) Appel denied her request to transfer to Belfast; 6) Appel mistreated her in front of others after he found out she had complained to MBNA's personnel department about him and moved her seat to a more "isolated" location; and 7) MBNA refused to allow her to get reassigned to a new manager before terminating her. In light of *Morgan*, however, only those acts that occurred on or after January 12, 2000, 300 days before Plaintiff filed her charge, are timely filed. Therefore, Plaintiff's claims that she was wrongfully denied the award for "Rookie of the Month" in November 1999; excluded from the specialized training session in October 1999; and reprimanded in front of others in October 1999, and early January 2000, are not actionable. *See id.* (suggesting that denials of awards, exclusions from training, and individual instances of inappropriate behavior in front of others constitutes discrete discriminatory acts because each act can be said to have occurred on a particular day, as opposed to a series of days or years).[2] The Court, therefore, only reviews Plaintiff's remaining allegations.[3]

### b. Prima Facie Case

To establish a prima facie case of retaliation in the workplace, a plaintiff must demonstrate that: 1) she engaged in protected conduct under Title VII; 2) she suffered an adverse employment action; and 3) the adverse action is causally connected to the protected activity. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996).

In this case, there is no argument that Plaintiff engaged in protected conduct. Defendants, however, dispute that Plaintiff is able to show that MBNA engaged in

---

**2.** Defendant argues the "effective date" of Plaintiff's suit for statute of limitations purposes under the MHRA is November 8, 2001, pursuant to a tolling agreement between Plaintiff and MBNA. (*See* Def.'s Mot. for Summ. J. at 6 (Docket # 11).) The Court disagrees. The tolling agreement provides that if Plaintiff files a civil action after November 21, 2001, the agreement "will become void and of no effect." (*See* Decl. of James Erwin at Ex. A (Docket # 12).) Because Plaintiff filed her action in this Court on January 11, 2002, the Court finds the tolling agreement is void. Furthermore, only acts that occurred on or after January 11, 2000, are timely for purposes of the MHRA, which has a two year statute of limitations period. 5 M.R.S.A. § 4613(2)(C) (2002). As such, Plaintiff's claims that she was wrongfully denied the award for "Rookie of the Month" in November 1999, and reprimanded in early January 2000, are untimely under both Title VII and the MHRA.

**3.** In addition to reviewing Plaintiff's timely filed allegations, the Court reviews those allegations for which the date of occurrence is unclear or unknown.

adverse employment actions or that there are causal connections between the alleged adverse actions and the protected activity.

■ Whether an employment action is "adverse" and, therefore, actionable under Title VII, is gauged by an objective standard. *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir.1996). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Id.* The First Circuit has noted that adverse employment actions include a variety of types of conduct, such as "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir.1998); *Blackie*, 75 F.3d at 726 (finding that depriving an employee of a privilege of employment that he has reason to anticipate constitutes an adverse employment action).

■ Several types of circumstantial evidence can demonstrate a causal link between the protected act and the adverse act, such as evidence of differential treatment in the workplace, temporal proximity between the protected act and the adverse act, statistical evidence showing disparate treatment, and comments by the employer which intimate a retaliatory mindset. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir.1991). Similarly, changes in an employer's treatment of its employee after the protected conduct can reveal a causal connection. *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 51 (1st Cir.1999).

### i. Labeling Plaintiff as a "Complainer"

■ Plaintiff alleges she suffered an adverse employment action because MBNA labeled her as a "complainer" in retaliation for filing complaints against Appel. Plaintiff's only factual support, however, is that Heidi Sharpe ("Sharpe"), Appel's Department Manager, considered her to be a complainer. Without more, one person's opinion is not enough to amount to an adverse employment action. *Cf., Manning v. Met. Life Ins. Co., Inc.*, 127 F.3d 686, 693 (8th Cir.1997) (holding that evidence of "disrespect and ostracization by her supervisors" did not establish an adverse employment action). Furthermore, there is no evidence that Sharpe treated Plaintiff any differently from similarly situated employees because of her opinion. Plaintiff, therefore, fails to show that Sharpe's opinion constituted an adverse employment action.

### ii. Casual Dismissal of Plaintiff's Complaints

■ Plaintiff next alleges she suffered an adverse employment action because MBNA subjected her to an on-going hostile work environment by casually dismissing her complaints about Appel. Plaintiff's only factual support, however, is that Bobbi–Lyn Reed ("Reed"), an MBNA representative who started working on Appel's team after Plaintiff had already quit, thought that nothing was ever done with regard to Plaintiff's complaints about Appel. As stated above, one person's opinion, without more, is insufficient to support an allegation of adverse employment action.[4]

---

4. In addition to failing to provide sufficient facts to prove an adverse employment action, Plaintiff fails to accurately portray the events as they actually occurred. Specifically, Plaintiff's argument ignores that the undisputed facts show that, rather than casually dismiss Plaintiff's complaints, MBNA responded to them by conducting an investigation in January 2000, that involved interviewing each representative on Appel's team.

### iii. Denial of Transfer to Belfast

Plaintiff also alleges she suffered an adverse employment action because Appel denied her request to transfer to MBNA's Belfast office. Specifically, Plaintiff says she talked to Appel about a possible transfer to Belfast because she felt that the move would benefit her family. Plaintiff alleges Appel responded by saying she could not go to Belfast without manager approval and that he would not provide her with one because they did not have a good relationship.

Typically, in order to constitute an adverse employment action, the employer must either take something of consequence from the employee, or "withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Blackie,* 75 F.3d at 725. The employment action Plaintiff complains of does not fall into either category. Even assuming Appel had a retaliatory motive behind his comment, Plaintiff has not shown that she was deprived in any way of a benefit or privilege that was "part and parcel" of the employment relationship. *Hishon v. King & Spalding,* 467 U.S. 69, 75, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Nowhere does Plaintiff allege that a permanent transfer for personal reasons is a common enough practice at MBNA that an employee can reasonably anticipate obtaining approval once a request is submitted. As a result, Plaintiff fails to sufficiently allege an adverse employment action.

### iv. New Seating Assignment

■ Plaintiff further alleges she suffered an adverse employment action because Appel assigned her to a new seat before she resigned. The parties dispute whether this new seating arrangement isolated Plaintiff from her co-workers. Even assuming the new seating arrangement did, in fact, isolate Plaintiff from others, however, not everything that makes an employee unhappy constitutes an actionable adverse action. *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996). Plaintiff does not allege that her duties changed in any way or that she lost any tangible benefits due to the reassignment. As a result, Plaintiff does not sufficiently allege an adverse employment action.

### v. Refusal to Re-Assign to a New Manager

■ Finally, Plaintiff alleges she suffered an adverse employment action because MBNA terminated her employment without allowing her the opportunity to exercise her option of switching to a new manager.

Because Defendants terminated Plaintiff's employment, Plaintiff clearly suffered an adverse employment action. *Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1104 (10th Cir.1998). In addition to proving she suffered an adverse employment action, however, Plaintiff must prove the existence of a causal link between the protected activity and the alleged retaliatory treatment in order to establish a prima case. *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996).

Here, the parties dispute whether Plaintiff properly notified MBNA of her decision to withdraw her resignation. On the one hand, Plaintiff alleges her husband notified MBNA of Plaintiff's decision to stay with the company under a new manager. On the other hand, Defendants deny they ever received such notice. Even assuming Defendants received the telephone call, the Court finds Plaintiff fails to establish a sufficient causal link between the adverse employment action and the protected activity. For example, Plaintiff fails to allege that MBNA treated her situation differently from other similar

**68**

situations or that anyone in MBNA's personnel department made any comments intimating a retaliatory mindset that may have contributed to their decision.

More importantly, Plaintiff fails to allege sufficient temporal proximity between her protected activity and the adverse action. While Plaintiff complained in October 1999, MBNA terminated her employment in May 2000. Without more, a span of approximately seven months is too long to reasonably infer that one event is causally related to the other. *See e.g., Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 398–99 (7th Cir.1999) (four month span between initial EEOC filing and termination insufficient to show causal connection); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (sufficient evidence existed where adverse actions occurred less than three months after complaint filed, two weeks after charge first investigated, and less than two months after investigation ended). Therefore, Plaintiff fails to establish a prima facie case of retaliation.

c. Constructive Discharge

█ Finally, Plaintiff claims she suffered a constructive discharge when she took a temporary leave of absence in February 2000, and when MBNA terminated her employment in May 2000. A "discharge" under 42 U.S.C. § 2000e–3(a) may be constructive as well as a direct firing. *Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998). To prove a retaliatory constructive discharge, a plaintiff must establish that her work environment was hostile. *Id.* at 48 (citing *Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 166 (1st Cir.1991)).

█ The mere existence of a hostile work environment, however, is often not enough to support a finding of a constructive discharge. *See Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992). In fact, a plaintiff must also show that the

conditions were "so difficult or unpleasant that a reasonable person in [the plaintiff's] shoes would have felt compelled to resign." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 28 (1st Cir.2002) (internal quotations and citations omitted); *see also Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5, 10 (1st Cir.2001) (stating that the working conditions must be so unpleasant that staying on the job while seeking redress would have been intolerable). The standard is an objective one; it "cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held." *Marrero*, 304 F.3d at 28 (internal quotations and citations omitted).

Plaintiff argues she was forced to leave MBNA on two different occasions (February 2000 and May 2000) due to Appel's conduct. Because a number of other MBNA employees left for the same reason in the past, Plaintiff argues there is at least a fact question as to whether the hostile work environment created by Appel became intolerable. The Court does not agree.

First, Plaintiff's short leave of absence in February can hardly be said to have been a "discharge" in light of the fact that she was still employed. *See Pedro–Cos v. Contreras*, 976 F.2d 83, 85 (1st Cir.1992) (no constructive discharge where the plaintiff is still employed). Even assuming Plaintiff's leave of absence could be considered a discharge, Plaintiff's argument still fails.

█ In order to prove a constructive discharge, a plaintiff must show that the work environment triggering the departure was more severe and pervasive than the minimum required to prove a hostile working environment. *See Landgraf*, 968 F.2d at 430 (internal citations omitted). Here, Plaintiff took a leave of absence in February 2000, because of the incidents alleged as part of her hostile work environ-

ment sexual harassment claim. As the Court stated above, however, these incidents fail to even constitute a work environment severe or pervasive enough to be actionable under Title VII. Thus, the working conditions could not have been so hostile as to force a constructive discharge.

Plaintiff also fails to prove she was constructively discharged in May 2000. Notwithstanding the fact that Defendants terminated Plaintiff's employment, the record shows that Plaintiff actually wanted to stay at MBNA (i.e., but for Defendants' decision to terminate Plaintiff's employment, Plaintiff would have continued to work at MBNA). In light of these undisputed facts, the working conditions could not have been so hostile such that a reasonable person would have found it intolerable to stay on the job while seeking redress. The Court, therefore, finds Plaintiff was not constructively discharged in May 2000.

### 2. Maine Human Rights Act

The MHRA prohibits an employer from discriminating against individuals because "they have made a charge, testified or assisted in any investigation, proceeding or hearing under this Act." 5 M.R.S.A. § 4572(1)(E) (2002). The language and intent of the MHRA generally follows federal anti-discrimination statutes under Title VII; Maine's Supreme Judicial Court has ruled that federal precedent guides in interpreting the statute. *See Winston v. Maine Technical Coll. Sys.*, 631 A.2d 70, 74–75 (Me.1993); *see also Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 436 n. 3 (1st Cir.1997) ("The Maine courts have relied on the federal case law surrounding Title VII for the purpose of construing and applying the provisions of the Maine Human Rights Act."). Accordingly, the Court finds that the discussion above surrounding Plaintiff's Title VII retaliation claim applies with equal force to Plaintiff's MHRA claim.

### C. Unpaid Wages

Under Count IX, Plaintiff claims a violation of Maine law regarding payment of wages alleging that MBNA failed to pay her for all hours worked. It is not clear whether she seeks to recover under 26 M.R.S.A. § 626 (1990), which provides a remedy for unpaid wages, or 26 M.R.S.A. § 670 (1990) for unpaid minimum wages. In any event, the Court grants summary judgment on this count because Plaintiff failed to brief the issue in response to Defendants' motion for summary judgment.

## IV. CONCLUSION

For the above stated reasons, the Court hereby GRANTS Defendants' Motion for Summary Judgment on Counts I, II, III, IV and IX (Docket # 11). Likewise, Plaintiff's only remaining count, Count VIII for punitive damages, is also dismissed as it pertains only to damages and cannot stand alone.

SO ORDERED.