STATE OF MAINE  
PENOBSCOT, ss.

SUPERIOR COURT  
CIVIL ACTION  
DOCKET NO. CV-07-285

ELIZABETH MILLER,

     Plaintiff,

v.

          **ORDER**

EASTERN MAINE MEDICAL  
CENTER,

     Defendant.

```
FILED & ENTERED
SUPERIOR COURT
  MAR 16 2009
PENOBSCOT COUNTY
```

This case is before the Court on a motion for summary judgment filed on July 1, 2008 by the defendant, Eastern Maine Medical Center ("EMMC"). EMMC filed a second motion for summary judgment on October 31, 2008. Oral argument was held on the first motion on December 2, 2008.

## BACKGROUND

The plaintiff, Elizabeth Miller, was previously employed at EMMC as an EEG technologist in the EEG Department, which was supervised by Patrick O'Leary. Kelli Veilleux, Christina Cobane, and Terrance Rooney, all EEG technologists, also worked in the department along with Emily Prescott, the department's receptionist.

The facts of the situation, viewed in a light most favorable to the plaintiff, are as follows. Miller and her co-workers suspected a sexual relationship between O'Leary and Cobane. O'Leary also favored Cobane by giving her preferential work assignments, by refusing to discipline her for lying about her reasons for missing work and speaking rudely towards other in the department, and in determining work and vacation schedules among those in the department. Cobane and O'Leary also took part in banter of a sexual

1

nature at the workplace and spent hours of time alone together in O'Leary's office. Specifically the two would tell sexual jokes, talk openly about each others' sex lives, and make comments regarding women passing by.

Miller confronted O'Leary on January 7, 2007 regarding the perceived favoritism towards Cobane. Miller suggested that they involve EMMC's Human Resources Department to help resolve the issues. O'Leary thanked Miller for bringing her concerns to him and stated that the issue could be resolved at a staff meeting. The next day Miller met with Paul Bolin, EMMC's Director of Employee Relations. Miller expressed to Bolin concerns about O'Leary's management of the department, particularly relating to his failure to address problems with Cobane. Miller also asked Bolin that she be granted a leave of absence because of fears regarding retaliation from O'Leary. Bolin assured her that retaliation would not be tolerated.

Miller returned to work. In the week following Miller's meetings with O'Leary and Bolin, Cobane again missed work and lied about being sick. Then, on January 17, 2007, Cobane was to receive an award for having previously arranged a conference, having been recommended for the award by O'Leary. Miller was so upset regarding Cobane's receipt of the award she went home sick. Subsequently, Miller consulted an attorney, took an unpaid leave of absence, and eventually resigned from her employment at EMMC.

## DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material

fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. A genuine issue of material fact exists when there is sufficient evidence to require the fact-finder to choose between competing versions of a fact that could affect the outcome of the case. *Id.* at 825; *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747.

**B.    Count I – Sexual Harassment**

At the center of the Miller's claim is an alleged relationship between Patrick O'Leary and Christina Cobane. The record shows that employees in the department suspected that the two may have had a sexual relationship. Miller and others in the department also observed what appeared to be preferential treatment by O'Leary towards Cobane. Miller claims that O'Leary's alleged relationship with and preferential treatment towards Cobane created an "implicit 'quid pro quo'" and a hostile work environment by sending "a message that the way for women to get ahead in the workplace is by engaging in sexual conduct." EEOC Notice No. 915-048 (Jan. 12, 1990).

Such preferential treatment, while potentially upsetting to Miller, is not actionable. The law "does not prohibit favoritism shown to a supervisor's paramour because such preferential treatment is based on voluntary romantic affiliation and not gender differences." *Miller v. Regents of the Univ. of Colorado*, 1999 U.S. App. LEXIS 16712, at *21 (10th Cir. 1999). The United States Equal Opportunity Commission Policy Guidance on Employer Liability under Title VII for Sexual Favoritism, which Miller relies on, provides:

> Not all types of sexual favoritism violate Title VII. It is the Commission's position that Title VII does not prohibit isolated instances of preferential treatment based upon consensual romantic relationships. An isolated instance of favoritism toward a "paramour" (or a spouse, or a friend) may

3

be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders. A female charging party who is denied an employment benefit because of such sexual favoritism would not have been treated more favorably had she been a man nor, conversely, was she treated less favorably because she was a woman.

EEOC Notice No. 915-048 (Jan. 12, 1990) (footnotes omitted).[1] In fact Miller not only complains that she was disadvantaged because of O'Leary's alleged favoritism towards Cobane, but she also complains that her male coworker, Terrance Rooney, suffered similarly.

It is clear from the EEOC guidelines and all of the federal cases on this issue that a plaintiff cannot recover for sexual harassment based upon a supervisor's preferential

---

[1] The EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism also offers the following two examples.

> Example 1 – Charging Party (CP) alleges that she lost a promotion for which she was qualified because the co-worker who obtained the promotion was engaged in a sexual relationship with their supervisor. EEOC's investigation discloses that the relationship at issue was consensual and that the supervisor had never subjected CP's co-worker or any other employees to unwelcome sexual advances. The Commission would find no violation of Title VII in these circumstances, because men and women were equally disadvantaged by the supervisor's conduct for reasons other than their genders.

> Even if CP is genuinely offended by the supervisor's conduct, she has no Title VII claim.

> . . .

> Example 3 – Same as Example 1, except CP's supervisor and other management personnel regularly solicited sexual favors from subordinate employees and offered job opportunities to those who complied. Some of those employees willingly consented to the sexual requests and in turn received promotions and awards. Others consented because they recognized that their opportunities for advancement would otherwise be limited. CP, who did not welcome this conduct, was not approached for sexual favors. However, she and other female and male coworkers may be able to establish that the conduct created a hostile work environment. She can also claim that by their conduct, the managers communicated to all female employees that they can obtain job benefits only by acquiescing in sexual conduct.

EEOC Notice No. 915-048 (Jan. 12, 1990).

4

treatment of another coworker with whom he or she has a voluntary sexual relationship.[2]

"'A co-worker's romantic involvement with a supervisor does not by itself create a hostile work environment.' Accordingly, [the plaintiff] cannot base [her] hostile work environment claim on the alleged romantic relationship." *Parker v. Otis Elevator Co.*, 9 Fed. App'x 615, 617 (9th Cir. 2001) (quoting *Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992). *See Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 862 (3d Cir. 1990); *DiCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 307-08 (2d Cir. 1986); *Winters v. ADAP, Inc.*, 76 F. Supp. 2d 89, 95-96 (D. Mass. 1999).

While Miller has also provided record evidence that O'Leary and Cobane told sexual jokes, talked openly about each others' sex lives, and commented on women passing by, such conduct, although distasteful in a professional environment, does not create a hostile work environment. To establish a hostile work environment, Miller must show more than a subjective perception that the environment was abusive. She must also show "an *objectively* hostile or abusive environment." *Nadeau v. Rainbow Rugs, Inc.*, 675 A.2d 973, 976 (Me. 1996) (emphasis added) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1986)). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (alteration in original) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).

Neither the Maine Human Rights Act nor its federal counterpart, Title VII, was "designed to create a. . .remedy for all offensive language and conduct in the workplace."

---

[2] The parties agree, as does the Court, that reliance on federal precedent is appropriate in construing the Maine Human Rights Act. *See Bowen v. Dep't of Human Servs.*, 606 A.2d 1051, 1053 (Me. 1992) ("[T]he use of federal precedent as an aid in interpreting Maine's anti-discrimination provisions is appropriate.").

*Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir. 1996). "It is not designed to purge the workplace of vulgarity." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995). *See Paquin v. MBNA Mktg. Sys.*, 233 F. Supp. 2d 58, 63-64 (D. Me. 2002). "It is not a bright line. . .between a merely unpleasant working environment on the one hand and a hostile or deeply repugnant one on the other." *Baskerville*, 50 F.3d at 431. Circuit Judge Posner described this line in the following manner.

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Id.* at 430.

In her opposition to this motion, Miller has appropriately described the conduct of O'Leary and Cobane as "sexual banter." Such banter, while undoubtedly tasteless, does not create an objectively hostile work environment.[3] Consequently, no genuine issues of material fact remain as to the merit of Miller's sexual harassment claim.

## C.     Count II – Whistleblower Protection Act

Miller has also made a claim under the Maine Whistleblower Protection Act ("WPA"), 26 M.R.S. §§ 831-840 (2008). In order to establish as claim under the WPA, "an employee must show (1) that she engaged in activity protected by the WPA, (2) that she experienced an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse employment action." *DiCentes v. Michaud*, 1998 ME 227, ¶ 14, 719 A.2d 509, 514. No genuine issue of material fact

---

[3] It is noteworthy that Emily Prescott, who the plaintiff alleges was an actual subject of some of the sexual banter, stated in her deposition that "it didn't get to the point where it was out of hand or, you know, I couldn't handle it." (Prescott Dep. at 7).

remains regarding the element of adverse employment action. The undisputed facts in this case clearly show that Miller did not suffer any adverse employment action.

It is undisputed that Miller's employment at EMMC ended when she resigned. EMMC did not terminate her employment or request that she resign. Miller argues that she was constructively discharged from her employment at EMMC. However, "to prove a constructive discharge, a plaintiff must show that the work environment triggering the departure was more severe and pervasive than the minimum required to prove a hostile working environment." *Paquin*, 233 F. Supp. 2d at 68. *See Lerman v. Mt. Sinai Cemetary Assoc.*, 2001 Me. Super. LEXIS 19, at *19 (Me. Super. Ct. 2001). Miller has failed to show that a hostile work environment existed for purposes of her sexual harassment claims; therefore, she necessarily also fails to show that she was constructively discharged.

## CONCLUSION

No genuine issue of material fact remains as to either of the counts of the plaintiff's complaint; therefore, the defendant's motion for summary judgment is granted.

The entry is:

> 1.    The defendant's first motion for summary judgment, filed July 1, 2008, is **GRANTED.** Judgment for the defendant.

> 2.    The defendant's second motion for summary judgment, filed October 31, 2008, is rendered **MOOT**.

3.    This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).


Date: March /6 , 2009

M. Michaela Murphy
Justice, Superior Court

8

ELIZABETH MILLER VS EASTERN MAINE MEDICAL CENTER
          -2007-0127595                          CASE #:BANSC-CV-2007-00285
------------------------------------------------------------------------

   SEQ TITLE              NAME                                  DOB   ATTY
   001 PL        ELIZABETH MILLER   BY JULIE FARR, ESQ          / /    T
   002 DEF       EASTERN MAINE MEDICAL CENTER   BY FRANK MCGUIRE, ESQ. &  T
                                                ANN MARIE STOREY, ESQ.