**Pamela DAVIS, Plaintiff**

v.

**EMERY WORLDWIDE CORPORATION,**
**Defendant**

**No. 02–228–P–H.**

United States District Court,
D. Maine.

June 23, 2003.

Neal F. Pratt, Verrill & Dana, Barbara J. Grady, Verrill & Dana, Portland, ME, for Pamela Davis, Plaintiff.

Frederick B. Finberg, The Bennett Law Firm, P.A., Portland, ME, Lynn A. Kappelman, Seyfarth Shaw, Boston, MA, Peter Bennett, The Bennett Law Firm, P.A., Portland, ME, for Emery Worldwide Corp, Defendant.

## RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVID M. COHEN, United States Magistrate Judge.

The defendant, Emery Worldwide Corporation, moves for summary judgment on all claims set forth in the complaint. Defendant's Motion for Summary Judgment, etc. ("Motion") (Docket No. 14) at 1. I recommend that the court grant the motion in part.

### I. Summary Judgment Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

### II. Factual Background

The parties' statements of material facts submitted pursuant to this court's Local Rule 56 include the following undisputed material facts, appropriately supported by citations to the summary judgment record.

The defendant corporation specializes in transportation services for business-to-business shippers of heavyweight cargo. Defendant's Statement of Material Facts Not in Dispute ("Defendant's SMF") (Docket No. 15) ¶ 2; Plaintiff's Local Rule 56(c), [sic] Opposing Statements of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 18) ¶ 2. It operates through a network of service centers and agent locations. *Id.* ¶ 3. On or about June 12, 1999 the defendant's general manager in Portland, Maine, Lynn Easler, hired the plaintiff to be one of two sales account managers working from that service center. *Id.*

¶ 4. After completing the defendant's orientation program in Ohio, the plaintiff worked as an outside sales account manager in Portland, Maine through September 12, 2000. *Id.* ¶ 5. This position required the plaintiff to make sales calls on customers and potential customers as well as do some work at the service center office. *Id.* ¶ 6.

The plaintiff's starting salary was $650 per week. *Id.* ¶ 7. She was also eligible to participate in the defendant's quarterly commission bonus program and had the use of a company car. *Id.* ¶ 8. She requested and received a copy of the defendant's leave policies. Plaintiff's Additional Facts Pursuant to Local Rule 56(c) ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF, beginning at p. 18) ¶ 117; Defendant's Responses to Plaintiff's Additional Facts ("Defendant's Responsive SMF") (Docket No. 21) ¶ 117. In March 2000 Easler evaluated the plaintiff's first six months of employment; the evaluation was satisfactory and the plaintiff received a standard raise of $50 per week. Defendant's SMF ¶¶ 9, 11; Plaintiff's Responsive SMF ¶¶ 9, 11. During this evaluation process Easler and the plaintiff developed goals by which the plaintiff would be measured at her one-year evaluation. *Id.* ¶ 12. After this evaluation, Easler met with the plaintiff on a weekly basis. *Id.* ¶ 13. Approximately one week after her March 2000 evaluation the plaintiff informed Easler that she was pregnant. *Id.* ¶ 14. Shortly thereafter, Easler told the plaintiff that she would permit the plaintiff to use her company car while on maternity leave. *Id.* ¶ 15. On or about June 9, 2000 after the plaintiff returned from a prenatal medical appointment Easler asked her about her appointment and, according to the plaintiff, stated: "Oh, how did it go? How about your weight?" or words to that effect. *Id.* ¶ 16.

The plaintiff contends that at some point during early summer of that year, she participated in a conference call with Easler and the defendant's regional sales manager, Roger Huenke, during which Easler commented that a customer had said that the plaintiff was getting "too big," or words to that effect, and that both Easler and Huenke laughed. *Id.* ¶ 24. The plaintiff did nothing to indicate to Easler or Huenke that she was offended or made uncomfortable by this comment, although she felt that Easler could tell by the plaintiff's face that the comment surprised her. *Id.* ¶ 25.

The plaintiff understood that she could file a complaint about harassment based on gender or medical condition with the defendant's human resources department through Keith Templeton, the regional human resources representative. *Id.* ¶¶ 27, 31. The plaintiff did not file a complaint with the defendant about such harassment. *Id.* ¶ 32.

The plaintiff and Huenke had the following exchange of e-mail on August 21, 2000:

Hi Roger,

Just checking in with you-as you know Lynn is on vacation and just wanted to see when Star 2000 will be out? Also wanted to see if you recovered from the mentorship meeting? The boys seemed to have run you pretty hard! I must admit, after bowling I thought I was about to have the baby then and there!!! About 5 weeks to go so I best sell-sell-sell until then!!!

Pam,

Glad to hear you are doing well. Yes the boys ran me ragged. A few years ago I would have been the only one standing! Good luck with the Babe, I'm not trying to start trouble but Lisa said you are as big as Fat Bastard.

I'll have an answer on the checks a little later.

*Id.* ¶ 34. "Fat Bastard" is a character in an Austin Powers movie. *Id.* The plaintiff never complained to Huenke or any other manager about this e-mail nor did she take advantage of the defendant's internal complaint process, with which she was familiar. *Id.* ¶ 36. The defendant contends that Huenke's e-mail remark was not inappropriate. Plaintiff's SMF ¶ 135; Defendant's Responsive SMF ¶ 135.

On August 31, 2000 Easler told the plaintiff that she would like the plaintiff to work on sales primarily from the office until her maternity leave started. Defendant's SMF ¶ 38; Plaintiff's Responsive SMF ¶ 38. During the remaining weeks prior to the plaintiff's leave, Easler wanted her to focus on transferring her accounts to Ms. Piacitelli, whom Easler assigned to cover the plaintiff's accounts. *Id.* ¶ 39. Easler also wanted to make the plaintiff more comfortable during the period immediately prior to her leave. *Id.* According to the plaintiff, Easler was also concerned that prospective customers would not be willing to start a new business relationship with the defendant, knowing that the outside sales person assigned to their account would not be available to assist them with the transition to the defendant. *Id.* ¶ 40. The plaintiff cannot recall any particular sales calls she had planned to make during the last two weeks before her leave. *Id.* ¶ 42. She could have transferred her accounts while remaining on the road making sales calls. Plaintiff's SMF ¶ 149; Defendant's Responsive SMF ¶ 149. The plaintiff did not request an accommodation nor did she express a concern that her pregnancy would prevent her from performing her duties. *Id.* ¶ 156.

In late August Easler mentioned that there might be a problem with the plaintiff using the company car while on leave because the defendant had switched disability carriers and the new carrier expressed a concern about applying the tax implications for the plaintiff's car allowance to her disability pay. *Id.* 121, 123. Easler also stated that the defendant did not feel comfortable having the plaintiff use the car due to the safety recall with the particular model. *Id.* ¶ 126. On September 5, 2000 the plaintiff sent Easler an e-mail to follow up on the car issue. *Id.* ¶ 127.

In early September 2000 Easler determined that the defendant needed the plaintiff's company car for business purposes, which meant that the plaintiff could not keep it during her maternity leave. Defendant's SMF ¶ 45; Plaintiff's Responsive SMF ¶ 45. Jeff Neely, Easler's supervisor, supported this decision. Plaintiff's SMF ¶¶ 114, 129; Defendant's Responsive SMF ¶¶ 114, 129. The defendant's policy, issued to the plaintiff when she was hired, provided that a company car may be reassigned when the assigned driver is on any type of leave. Defendant's SMF ¶ 47; Plaintiff's Responsive SMF ¶ 47. One other employee of the defendant was allowed to keep a company car while on leave. *Id.* ¶¶ 48–49. Easler was apologetic about the defendant's need to retain the company car assigned to the plaintiff. *Id.* ¶ 50. The plaintiff did not complain to any manager other than Easler about the handling of this issue, nor did she file an internal complaint. *Id.* ¶ 51.

On September 5, 2000 Easler conducted the plaintiff's one-year job evaluation. *Id.* ¶ 52. The delay in this evaluation was not atypical. *Id.* ¶ 54. This evaluation, covering the period January–June 2000, measured performance against the goals established in March 2000 and was not as favorable as the March evaluation. *Id.* ¶ 56. Easler did not give the plaintiff a pay increase because the review was less favorable. *Id.* ¶ 59. Because the plaintiff did not agree with the evaluation, Easler agreed to place it on hold and not submit

it. *Id.* ¶ 60. It was as if the evaluation never happened. *Id.* Easler agreed to review the performance issues, conduct a new evaluation three months after the plaintiff's return from leave and submit that evaluation to the defendant. *Id.* ¶ 61. The plaintiff contends that she asked Easler on September 5, 2000 why the performance issues had not been raised earlier and that Easler responded that she was intimidated by the plaintiff's pregnancy and did not think she could make the plaintiff work harder than she was already working during the plaintiff's third trimester. *Id.* ¶¶ 62–63. The plaintiff did not complain to any managers other than Easler about the September 2000 evaluation or that it constituted discrimination based on her pregnancy. *Id.* ¶ 64. During the September 5, 2000 conversation with Easler the plaintiff stated that she did not think that her pregnancy had affected her job performance. Plaintiff's SMF ¶ 171; Defendant's Responsive SMF ¶ 171.

The plaintiff's leave started in mid-September 2000. Defendant's SMF ¶ 66; Plaintiff's Responsive SMF ¶ 66. During her leave, on or about December 6, 2000, the plaintiff filed a charge of discrimination with the Maine Human Rights Commission ("MHRC"), claiming harassment, discrimination and retaliation based on pregnancy and discrimination based on disability. *Id.* ¶ 67; Plaintiff's SMF ¶ 178; Defendant's Responsive SMF ¶ 178. The defendant was not notified of the filing of this complaint until after the plaintiff had returned from her leave. Defendant's SMF ¶ 68; Plaintiff's Responsive SMF ¶ 68.

In November 2000 the defendant implemented a major corporate restructuring. *Id.* ¶ 69. The defendant overhauled its sales structure. *Id.* ¶ 70. Each service center, with the possible exception of the service center in Portsmouth, New Hampshire, would employ one fewer outside sales account manager and instead would employ that person in the newly-created position of inside sales account manager. *Id.* ¶ 71. The new position would be responsible for serving customers whom the defendant deemed to need less contact and the outside sales manager would be responsible for serving the larger accounts that the defendant deemed to merit a higher level of contact. *Id.* ¶ 72. Easler requested an exception for the Portland service center to allow her to retain both outside sales account managers; the defendant denied this request. *Id.* ¶ 74. Easler then had to decide whether to retain the plaintiff or Ms. L'Heureux, the other outside sales account manager, in that position. *Id.* ¶ 75. Easler chose to retain L'Heureux in the outside position, at least in part because she possessed a United States Customs Broker's license. *Id.* ¶ 76. Easler also chose to retain L'Heureux because she had substantial contacts in the shoe industry from her previous work experience and the defendant wanted to increase its business with this industry. *Id.* ¶ 79. The plaintiff did not have a customs broker's license, although she had customs experience, and she had generated business with Sebago Shoe Company. Plaintiff's Responsive SMF ¶¶ 79–80.

The plaintiff returned from her leave on December 11, 2000. Defendant's SMF ¶ 82; Plaintiff's Responsive SMF ¶ 82. Easler met with the plaintiff that day to tell her about the corporate restructuring. *Id.* ¶ 83. Easler offered the plaintiff the new inside sales position in Portland. *Id.* ¶ 84. Easler also offered the plaintiff the new inside sales position at the Portsmouth, New Hampshire service center. *Id.* ¶ 85. The Portsmouth service center is fifteen miles closer to the plaintiff's home than is the Portland service center. *Id.* The plaintiff chose the position in Ports-

mouth at the same base salary she had received as an outside sales person plus the opportunity to earn a quarterly sales commission. *Id.* ¶ 86. The plaintiff no longer had use of a company car. Plaintiff's SMF ¶ 198; Defendant's Responsive SMF ¶ 198. That afternoon, the plaintiff met with the Portsmouth service center general manager, Robert Leikauskas, who introduced her to the other employees at that service center. Defendant's SMF ¶ 87; Plaintiff's Responsive SMF ¶ 87. The plaintiff notified Leikauskas, either on December 11 or December 12, 2000, of her filing of a charge of discrimination while she was on leave. *Id.* ¶ 88. Neither the MHRC nor the Equal Employment Opportunity Commission had yet informed the defendant of the filing. *Id.* ¶ 89.

Upon receiving this news, Leikauskas consulted with Templeton, the regional human resources representative. *Id.* ¶ 90; Plaintiff's SMF ¶ 206; Defendant's Responsive SMF ¶ 206. Leikauskas voiced his opposition to the instruction that he tell the plaintiff that she would need to drop her charge in order to continue in her new sales position. Plaintiff's SMF ¶¶ 207–08; Defendant's Responsive SMF ¶¶ 207–08. Leikauskas then told the plaintiff that she would no longer have a position with the defendant if she did not withdraw her complaint without prejudice. *Id.* ¶¶ 213–24. The plaintiff contacted her attorney. *Id.* ¶ 216. After additional telephone calls involving various managers and the plaintiff's attorney, Leikauskas rescinded that request and made clear that the plaintiff had the job and would not need to withdraw her charge of discrimination. Defendant's SMF ¶ 92; Plaintiff's Responsive SMF ¶ 92. This situation lasted approximately 45 minutes. *Id.* ¶ 93.

An inside sales representative handled the smaller sales-generating customers. Plaintiff's SMF ¶ 199; Defendant's Responsive SMF ¶ 199. An inside sales representative did not have as much direct customer contact as an outside sales representative had. *Id.* An inside sales representative focused on telephone contact with customers. *Id.* An inside sales position was assigned a lower salary grade than an outside sales position. *Id.* ¶ 200. The two positions had different commission programs. *Id.* ¶ 201.

The defendant generally issues fourth quarter bonus/commission checks in early March of the following year. *Id.* ¶ 238. These checks are send to the service centers for distribution. *Id.* ¶ 239. In March 2001 the defendant issued a quarterly bonus check to the plaintiff. Defendant's SMF ¶ 95; Plaintiff's SMF ¶ 95. The check was forwarded to Easler, who held the check and did not deliver it to the plaintiff. *Id.* ¶¶ 97–98. Before the plaintiff went on her leave, Easler had informed her that she was ineligible for a fourth quarter commission. Plaintiff's SMF ¶¶ 243–44; Defendant's Responsive SMF ¶¶ 243–44. In July 2001 the plaintiff became aware of a discrepancy in the federal tax withholding that resulted from the bonus check. *Id.* ¶¶ 240–41. Upon learning that the plaintiff had not received the check, the defendant issue a new one in July 2001, four months after the first check had been issued. Defendant's SMF ¶ 99; Plaintiff's Responsive SMF ¶ 99.

The plaintiff worked as an inside sales representative until March 2002, when she accepted an offer of an outside sales account manager position based in Portsmouth. *Id.* ¶ 100. The defendant did not post this open position and did not interview anyone for it. *Id.* ¶ 101. The defendant realigned the two Portsmouth territories to meet the plaintiff's needs even though it had a freeze on realignments at the time. *Id.* ¶ 102. The plaintiff worked as an outside sales account manager until

August 2002, when she resigned to accept a position with a competitor who offered her ten thousand dollars more in salary. *Id.* ¶ 103.

The defendant's policy requires the transfer of an employee's personnel file when the employee is transferred to another location. Plaintiff's SMF ¶ 230; Defendant's Responsive SMF ¶ 230. Easler did not transfer the plaintiff's personnel file to Leikauskas even when he requested it. *Id.* ¶ 231. The file was not transferred because of the pending discrimination charge to preserve the integrity of the file. *Id.* ¶¶ 232–33.

On October 21, 2001 the plaintiff filed a second charge with the MHRC alleging retaliation for exercising her statutory rights. *Id.* ¶ 267. She alleged that the defendant retaliated against her by eliminating her position, demanding that she withdraw her discrimination charge and withholding her compensation. *Id.*

On September 13, 2002 the Equal Employment Opportunity Commission sent the plaintiff a right-to-sue letter. *Id.* ¶ 312.

### III. Discussion

The complaint alleges that the defendant violated the Maine Human Rights Act ("MHRA") by discriminating against her on the basis of pregnancy and perceived disability and by retaliating against her for filing a charge of discrimination, Amended Complaint (Docket No. 5) ¶¶ 39–50 (Counts I and II); the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") by discriminating against her on the basis of sex and by retaliating against her for filing a charge of discrimination and harassment, *id.* ¶¶ 51–60 (Count III); and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, by discriminating against her as a result of regarding her as having a disability or impairment, *id.* §§ 61–67 (Count IV). The plaintiff disavows any

"distinct claim of sexual harassment under Title VII or MHRA." Plaintiff's Opposition to Defendant's Motion for Summary Judgment, etc. ("Opposition") (Docket No. 17) at 1 n. 1.

The parties agree that the analysis of the plaintiff's MHRA claims is the same as the analysis of her federal claims for purposes of summary judgment. Motion at 13 n. 14; Opposition at 2 n. 2. *See Green v. New Balance Athletic Shoe, Inc.,* 182 F.Supp.2d 128, 135 (D.Me.2002); *Bowen v. Department of Human Servs.,* 606 A.2d 1051, 1053 (Me.1992). My discussion of the federal claims will accordingly be equally applicable to the plaintiff's state-law claims.

### A. Civil Rights Act

The section of Title VII invoked by the plaintiff provides, in relevant part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e–2(a)(1). "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k) (the Pregnancy Discrimination Act or PDA).

A plaintiff seeking shelter under the PDA's umbrella may assert two types of claims: disparate treatment or disparate impact. The instant case deals only with the first variety, in which an employer affirmatively treats a pregnant employee differently than it treats its

non-pregnant employees. A plaintiff suing her employer for disparate treatment bears the burden of showing that her employer purposely took adverse action against her because of her pregnancy. If she can do so by producing direct evidence of her employer's discriminatory intent—say, a statement by the employer that admits to taking her pregnancy into account in making an employment decision—her burden is satisfied, and to avoid liability the employer must demonstrate that it would have taken the adverse employment action even in the absence of the plaintiff's pregnancy.

In the majority of cases, however, a plaintiff relies on circumstantial evidence of discrimination in pressing her case. She must approach this task via the well-trodden path plotted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The now-familiar "burden shifting" analysis of *McDonnell Douglas* first requires a plaintiff to establish a prima facie case of pregnancy discrimination: (1) that she was pregnant; (2) that she was capable of adequately performing her job; (3) that her employer took an adverse action against her; and (4) that her employer treated her differently than it treated other, non-pregnant employees who had a similar ability or inability to work. Once the plaintiff reaches this threshold, the evidentiary burden shifts to the employer to identify a nondiscriminatory reason for taking the adverse action against her. On this showing, the burden shifts back to the plaintiff to demonstrate that the employer's given reasons are pretext, and that the determining motivation for the adverse action was retaliatory.

*Green*, 182 F.Supp.2d at 134–35 (citations omitted). Here, the defendant contends that no adverse employment action was taken, the plaintiff's job performance was not satisfactory, the plaintiff was not treated differently from employees who were not pregnant and that it has offered non-discriminatory reasons for its challenged actions which the plaintiff cannot show are pretextual. Motion at 19–20.

*1. Discrimination.* The plaintiff first argues that she has submitted direct evidence of discrimination with respect to two incidents: the modification of her position immediately before she went on maternity leave and Easler's alleged "fail[ure] to address perceived performance issues with Ms. Davis prior to completing a negative review resulting in a loss of pay." Opposition at 3–4. With respect to the first incident, the defendant responds that "there is no evidence to suggest that Plaintiff's responsibilities changed during this two week period [1] or that her sales were impacted in any way by her conducting more of her business from the office rather than on the road during that two week period." Defendant's Reply Brief in Support of Motion for Summary Judgment ("Reply") (Docket No. 20) at 5. This argument constitutes a tacit admission that there is direct evidence that would allow a factfinder to conclude that Easler's motive

---

1. The plaintiff consistently refers to the span of time at issue as a three-week period, Plaintiff's SMF ¶¶ 143, 144, but she also does not contest the defendant's description of it as a two-week period, Defendant's SMF ¶¶ 39, 42–44; Plaintiff's Responsive SMF ¶¶ 39, 42–44. The summary judgment record establishes only that on August 31, 2000 Easler directed the plaintiff to work primarily from the office and that the plaintiff began her leave "in mid-September, 2000." Defendant's SMF ¶¶ 38, 66; Plaintiff's Responsive SMF ¶¶ 38, 66. The two-week characterization appears more reasonable under the circumstances, but the difference is not significant for purposes of my analysis.

in directing the plaintiff to work primarily from the office instead of on the road for the final two weeks before she began her maternity leave was at least in part based on the plaintiff's pregnancy. Indeed, the record evidence establishes this. Defendant's SMF ¶ 39; Plaintiff's SMF ¶¶ 142–43, 150, 153, 155; Defendant's Responsive SMF ¶¶ 142–43, 150, 153, 155. In each of the listed responses to the plaintiff's statement of material facts, the defendant states that the pregnancy was one of the reasons why Easler directed the plaintiff to work inside during this period.[2] The defendant admits that the plaintiff did not request any accommodation at this time. Plaintiff's SMF ¶ 156; Defendant's Responsive SMF ¶ 156. The defendant contends that the plaintiff "was permitted to continue to make outside sales calls and did in fact do so," although it offers no evidence in support of the latter assertion. Defendant's Responsive SMF ¶ 152; Defendant's SMF ¶¶ 42–44 (page 147 of the deposition of Marie Lynn Easler, Exh. B to Defendant's SMF, does not refer to any outside sales calls actually made by the plaintiff during this period).

▬▬ It is not necessary that the plaintiff's job responsibilities have been changed during the period in question in order for there to have been an adverse employment action.

Typically, in order to constitute an adverse employment action, the employer must either take something of consequence from the employee, or withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service.

*Paquin v. MBNA Marketing Sys., Inc.,* 233 F.Supp.2d 58, 67 (D.Me.2002) (citation and internal quotation marks omitted). The plaintiff must show that she was deprived in some way of a benefit or privilege that was "part and parcel" of the employment relationship. *Id.* Whether an employment action is "adverse" is gauged by an objective standard. *Id.* at 66. The First Circuit has specifically mentioned the following as adverse employment actions: demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees. *Id.; see also Nelson v. University of Maine Sys.,* 923 F.Supp. 275, 281 (D.Me. 1996). Here, the plaintiff has offered evidence to the effect that the modification of her position after August 31, 2000 resulted in a reduction in her ability to earn commissions. Plaintiff's SMF ¶¶ 147–52.[3] This situation fits the definition of an adverse employment action. The fact that the plaintiff offers no evidence that she actually lost commissions as a result does not insulate the defendant, which understandably makes no attempt to argue that it would have taken the same action in the absence of the plaintiff's pregnancy, from liability under these circumstances. *See Weston–Smith v. Cooley Dickinson Hosp., Inc.,* 282 F.3d 60, 64 (1st Cir.2002) (defen-

---

**2.** Because no possibility of a mixed motive for the defendant's actions with respect to this incident is raised by the evidence in the summary judgment record, the recent decision of the Supreme Court in *Desert Palace, Inc. v. Costa,* —— U.S. ——, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), does not apply.

**3.** The defendant contends that the plaintiff's testimony that her ability to earn commis-

sions was reduced "is not a fact; [sic] merely unsupportable speculation." Defendant's Responsive SMF ¶ 151. Taking this assertion as an objection, it is overruled. The defendant has made no showing that the plaintiff, who was in a position to know about the manner in which she earned commissions, was merely speculating.

dant may avoid liability for damages in direct-evidence case but still be subject to declaratory and injunctive relief).

■ The result is different in the case of the one-year evaluation of the plaintiff by Easler, however. First, it is important to note that the evidence does not support the assertion that the evaluation performed in early September 2000 "result[ed] in a loss of pay," Opposition at 4. The only evidence in the summary judgment record on this point is that, as a result of this review, "Easler did not give Ms. Davis a pay raise." Defendant's SMF ¶ 59; Plaintiff's Responsive SMF ¶ 59; Plaintiff's SMF ¶ 175; Defendant's Responsive SMF ¶ 175. Failure to award a merit increase could be an adverse employment action, but in this case there is no evidence suggesting that employees in the plaintiff's position who were not pregnant routinely received such an increase; that the plaintiff could not have received the increase retroactively upon her return from maternity leave since she agrees that the evaluation was placed on hold and not submitted, a new evaluation was to be performed three months after her return, and it "was as if the [challenged] evaluation never happened," Defendant's SMF ¶¶ 60–61, Plaintiff's Responsive SMF ¶¶ 60–61; or that Easler routinely addressed performance issues with employees who were not pregnant before she conducted their annual evaluations. Under these circumstances, there is no direct evidence of discrimination in connection with the September 2000 evaluation and it cannot serve as the basis for recovery under this theory.

The plaintiff addresses the remainder of her specific claims of discrimination under the burden-shifting analysis that is employed in the absence of direct evidence. Those incidents include the September 2000 evaluation, the elimination of the plaintiff's outside sales position while she was on leave and the loss of the use of a company car during her leave. Opposition at 8. The plaintiff has submitted evidence sufficient to establish the first two elements of the test set forth in *Green*. She was pregnant, Defendant's SMF ¶ 14; Plaintiff's Responsive SMF ¶ 14, and she was capable of adequately performing her job. On the latter point, the evidence is marginal, but the applicable legal standard requires the court to give the plaintiff the benefit of all reasonable inferences from the record evidence. The defendant contends that the plaintiff "cannot establish that her performance as of September 2000[ ] was satisfactory as she concedes her failure to meet the goals she collaboratively set in March 2000." Motion at 20. Whether the plaintiff's job performance was satisfactory is not the applicable legal standard in a case that does not involve discharge of the employee. Even if it were, however, the defendant cannot use the September 2000 evaluation, which it contends was "place[d] ... on hold ... as if the evaluation never happened," Defendant's SMF ¶ 60, as evidence of unsatisfactory job performance. Nor is it correct to characterize the plaintiff's position as an admission that she failed to meet performance goals set in March 2000. Plaintiff's Responsive SMF ¶¶ 57–58, 60–61; Plaintiff's SMF ¶¶ 162–68. Even if such an admission had been made, there is no evidence that the defendant found other employees with a similar record in relation to performance goals to be performing unsatisfactorily. Here, where there was no discharge and the defendant clearly expected the plaintiff to return to work after her maternity leave, the *Green* formulation of the test is particularly appropriate. There is no evidence in the summary judgment record that would allow a reasonable factfinder to conclude that the plaintiff was not capable of performing her job ade-

quately at the time any of the three allegedly adverse actions were taken.

 Each of these claims founders for other reasons, however. With respect to the September 2000 evaluation, I have already concluded that there is insufficient evidence in the summary judgment record to allow a reasonable factfinder to conclude that an adverse employment action was taken. The claim with respect to the elimination of the plaintiff's job while she was on leave is perhaps inartfully expressed. "There is little doubt that an employer, consistent with its business judgment, may eliminate positions during the course of a downsizing without violating Title VII even though those positions are held by members of protected groups (pregnant women included)." *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 422 (1st Cir.1996). The plaintiff does not really seek to challenge the company-wide downsizing, Defendant's SMF ¶ 69; Plaintiff's Responsive SMF ¶ 69, as a discriminatory act directed toward her; rather, she attacks the decision to award the single outside sales position to an employee other than herself, Opposition at 8. While she contends that that employee's qualifications were not superior to hers, she offers no reason other than the timing of the decision with respect to her maternity leave that would allow a factfinder to conclude that the defendant was in fact discriminating against the plaintiff because of her pregnancy. Indeed, the undisputed evidence is that Easler sought to retain both outside sales positions in Portland, at a time when she clearly expected that the plaintiff would return to one of those positions after her leave. Defendant's SMF ¶¶ 50, 74; Plaintiff's Responsive SMF ¶¶ 50, 74. The defendant offers evidence that the other employee's qualifications were in fact superior to those of the plaintiff, Defendant's SMF

¶¶ 76–77, 79–80; Plaintiff's Responsive SMF ¶¶ 76–77, 79–80. *See Weston–Smith*, 282 F.3d at 69–70 (plaintiff's argument concerning relative qualifications of herself and replacement "nothing more than second-guessing" and did not permit inference of improper motive). Assuming *arguendo* that the plaintiff could establish that this decision was an adverse employment action and that the defendant treated her differently from other, non-pregnant employees whose jobs were eliminated by the downsizing,[4] the defendant has offered a nondiscriminatory reason for retaining L'Heureux rather than the plaintiff in the outside sales position, and the plaintiff has not offered evidence to demonstrate that this reason is a pretext. The plaintiff argues that the defendant offered inconsistent reasons for this decision, Opposition at 10, but the statements she identifies are neither contradictory nor inconsistent. She also contends that the defendant, less than a year later, "recreated" her position in Portland and hired a candidate without the specific qualifications deemed to make L'Heureux a better candidate than the plaintiff. *Id.* Assuming *arguendo* the truth of this contention, it does not allow an inference that the plaintiff's pregnancy was in fact the motivation behind the decision to retain L'Heureux rather than the plaintiff in the outside sales position. Any such inference would be purely speculative. *See generally Zapata–Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 47 (1st Cir.2002). The plaintiff also contends that Easler's "admissions that she made pregnancy-related comments," Opposition at 10, is evidence of pretext. However, "stray workplace remarks ... normally are insufficient, standing alone, to establish ... pretext." *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir.2002). The only remarks attributed to Easler in the

---

4. The plaintiff in fact offers no evidence whatsoever on this element of the *Green* test.

paragraphs of the plaintiff's statement of material facts identified in connection with this argument, Opposition at 10–11, are the following:[5]

> When Ms. Davis challenged the job modification, Ms. Easler responded by stating "Let's face it. How successful are you going to be closing business nine months pregnant? New customers won't feel comfortable coming on knowing that you will not be there to take care of them." (Plaintiff's SMF ¶ 146) I do clearly remember admitting to not having addressed my concern earlier due to her pregnancy I had a difficult time asking her to make more calls and work harder towards the end of her trimester .... Candidly, I admitted to her that I'd never managed a pregnant sales person before. (Plaintiff's SMF ¶ 173).

The defendant denies the first paragraph. Defendant's Responsive SMF ¶ 146. In any event, these two remarks are not sufficient to establish pretext with respect to the job modification.

■ Finally, with respect to the company car, the plaintiff has not submitted evidence that would allow a reasonable factfinder to conclude that the withdrawal of the promised use of the car before her leave began was an adverse employment action. The plaintiff does not even address the question whether the denial of the use of the car during her leave was an adverse employment action. Opposition at 8. Here, the undisputed evidence is that the defendant's written policy "issued to Ms. David upon her hire" stated that "[i]f the assigned driver is on any type of leave (medical, disability, etc.), the company car may be reassigned." Defendant's SMF ¶ 47; Plaintiff's Responsive SMF ¶ 47. Accordingly, the fact that the plaintiff ultimately was not allowed to use her company car while on her maternity leave cannot establish that she was deprived of a benefit or privilege that was "part and parcel" of the employment relationship. *Paquin,* 233 F.Supp.2d at 67. The fact that one other employee was allowed to use his company car while on leave, Defendant's SMF ¶ 49, is consistent with the defendant's stated policy and does not show that the plaintiff was treated differently from a similarly situated employee, particularly given the plaintiff's admission that this employee's "situation ... was different than Ms. Davis [sic]," Plaintiff's Responsive SMF ¶ 49.[6]

*2. Retaliation.* Under Title VII, it is unlawful for an employer to retaliate against an employee because she has charged that the employer violated Title VII.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

To establish a prima facie case of retaliation in the workplace, a plaintiff

---

**5.** The plaintiff also cites paragraphs 153–55, 171 and 178 of her statement of material facts, but none of these paragraphs includes any alleged comments by Easler.

**6.** To the extent that the incidents upon which the plaintiff relies in connection with her discrimination claim, other than the modification of her job in the two or three weeks before she began her maternity leave, may be said to present "mixed motive" factual situations, and to the extent that *Costa* may be interpreted to have changed the allocation of the evidentiary burden on employers, the allocation of that burden does not affect my conclusions regarding those incidents.

must demonstrate that: 1) she engaged in protected conduct under Title VII; 2) she suffered an adverse employment action; and 3) the adverse action is causally connected to the protected activity. *Paquin*, 233 F.Supp.2d at 65. The defendant concedes that the plaintiff engaged in protected activity when she filed a charge of discrimination on December 6, 2000 but contends that she cannot establish either of the remaining two elements of this claim. Motion at 22–23.

The plaintiff asserts that the following incidents constituted unlawful retaliation by the defendant: the December 12, 2000 demand that she withdraw her charge in order to continue to be employed by the defendant, Easler's withholding of the commission check for four months, the failure to transfer the plaintiff's personnel file from Portland to Portsmouth when the plaintiff transferred to Portsmouth, the defendant's hiring of a second outside sales representative in Portland in November 2001, the offer of an outside sales position to the plaintiff in March 2002 "with an unreasonable deadline within which to accept the position," heightened scrutiny of her performance, failure to provide "significant support from management," failure to calculate appropriately the ratings for the Ocean Awards and failure to provide the plaintiff with contact with a major customer with the potential of increased revenue. Opposition at 13–16. Two of the incidents from this list fall so far short of the applicable definition of an adverse employment action, discussed above, that no further discussion of them is necessary: the failure to transfer the plaintiff's personnel file and the March 2002 offer of an outside sales position.

■ The demand that the plaintiff withdraw her charge was rescinded within 45 minutes. Defendant's SMF ¶ 93; Plaintiff's Responsive SMF ¶ 93. At most, this was a threat, quickly withdrawn. It did not constitute adverse employment action, *see Land v. Midwest Office Tech., Inc.*, 114 F.Supp.2d 1121, 1141 (D.Kan.2000) (unrealized threats fall short of actionable retaliation); *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1381 (10th Cir.1994) (no adverse employment action when statement that plaintiff would be evaluated differently from comparable employees not carried out), no matter how strong the plaintiff's emotional reaction may have been, Plaintiff's SMF ¶ 222; Plaintiff's Responsive SMF ¶ 93. Again, "[w]hether an employment action is 'adverse' and, therefore, actionable under Title VII, is gauged by an objective standard." *Paquin*, 233 F.Supp.2d at 66. The plaintiff was not denied a term, condition or privilege of employment by this action, which would, if pressed by the defendant, have been unlawful.

■ With respect to the hiring of a second outside sales person in Portland in November 2001, the plaintiff contends that the defendant "failed to follow its own policy and practice" by not posting the position or offering it to her. Opposition at 15–16. The defendant contends that this claim "is not part of the charges of discrimination and is not part of the Complaint and therefore may not now be added, at the 11th hour to her Complaint." Defendant's Responsive SMF ¶ 268. The defendant's characterization of the amended complaint ·and the relevant charge is correct. Amended Complaint,. *passim;* Charge of Discrimination [dated October 21, 2001], Exh. 28 to Plaintiff's SMF. However, this alleged event of retaliation occurred after the filing of the plaintiff's second charge. Under such circumstances, the event is reasonably related to the charge that was filed and the plaintiff may pursue it in this action even though it was not presented to the MHRC and

EEOC. *Clockedile v. New Hampshire Dep't of Corrections*, 245 F.3d 1, 6 (1st Cir.2001). Nor does the fact that the specific incident is not described in the complaint mean that the plaintiff may not rely on it at this stage of the proceedings. *Gorski v. New Hampshire Dep't of Corrections*, 290 F.3d 466, 474 (1st Cir.2002) (plaintiff need not identify in complaint all evidence that would later be offered in support of discrimination claim).

█ On the merits, this incident does not meet either the second or the third prongs of the test for a prima facie case of retaliation. The paragraphs of her statement of material facts cited by the plaintiff in support of her position on this incident, Opposition at 15–16, establish that the defendant failed to follow its own policies in filling the position, Plaintiff's SMF ¶¶ 268–73, 276–79 & 283. However, they do not establish that the plaintiff had any basis to expect to be given the position or that the failure to post the position internally affected the plaintiff any differently than it did all other employees. In the absence of such evidence, the fact that the plaintiff was not given the position is not an adverse employment action, *see Blackie v. State of Maine*, 75 F.3d 716, 726 (1st Cir. 1996) (employer's inaction can operate to deprive employee of privilege of employment that employee had reason to anticipate she would receive and thus constitute adverse employment action), nor could a reasonable factfinder conclude that the hiring of another person for the position was causally related to the plaintiff's charge of discrimination, *see Randlett v. Shalala*, 118 F.3d 857, 863 (1st Cir.1997).

The plaintiff's contentions that her job performance was subjected to heightened scrutiny and she failed to receive significant support from management after her discrimination charges were filed are based solely on a citation to paragraph 318

of her statement of material facts. Opposition at 16. That paragraph states, in its entirety:

> In August 2002, Ms. Davis decided to leave Emery because she felt she could no longer handle Emery's heightened scrutiny and management's lack of support for her.

Plaintiff's SMF ¶ 318. The defendant objects to the paragraph on the grounds, *inter alia*, that it is self-serving and conclusory. The First Circuit has repeatedly said that "conclusory allegations, improbable inferences, and unsupported speculation" may not provide the basis for successful opposition to a motion for summary judgment. *E.g., Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 536 (1st Cir.1996). The evidentiary support offered by the plaintiff for these claims cannot reasonably be described as anything other than conclusory allegations. *See generally Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir.1998) (discussing sufficiency of evidence on similar claim); *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2000) (plaintiff making such a claim must show that other employees similarly situated were not dealt with in the same manner); *Fortner v. State of Kansas*, 934 F.Supp. 1252, 1268 (D.Kan.1996) (same). The defendant is entitled to summary judgment on these claims.

█ With respect to her claim that the defendant "failed to appropriately calculate the ratings for the Ocean Awards," the plaintiff relies on paragraph 315 of her statement of material facts. Opposition at 16. That paragraph states, in its entirety:

> Emery failed to award Ms. Davis with a sales award-Ocean Award. Emery left her off the distribution list to submit her sales figures for calculation of the award.

Plaintiff's SMF ¶ 315.[7] There is insufficient information in this paragraph to allow a reasonable factfinder to infer either that an adverse employment action occurred or that any such action was causally related to the plaintiff's filing of her charges of discrimination.

▮ The plaintiff's claim that the defendant retaliated by failing "to provide her contact with a major customer with the potential of increased revenues" is supported by a citation to paragraphs 285–89 of her statement of material facts. Opposition at 16. The defendant objects to these paragraphs as follows: "This is inadmissible hearsay and not part of either charge or the Complaint." Defendant's Responsive SMF ¶¶ 285–89. I have already determined that the objections based on the content of the charges and the complaint are without merit. The record evidence cited by the plaintiff in support of these paragraphs is Exhibit 35 attached to her statement of material facts. That document appears to be a reproduction of a series of e-mails. The plaintiff has made no attempt to authenticate this document or to show that it is subject to any exception to the hearsay rule. Even if such an attempt had been made, the document does not show that the plaintiff suffered any lost "revenue" or even any opportunity for "increased revenue" as a result of the events chronicled therein. *See generally Bishop v. Bell Atlantic Corp.*, 299 F.3d 53, 59 (1st Cir.2002) (absence of evidence of meaningful consequence to plaintiff prevents court from finding that he satisfied his prima facie burden). Accordingly, the plaintiff cannot establish, on this showing, that this was an adverse employment action.

▮ The outcome differs with respect to the single remaining retaliation claim, involving the delay in providing her with the commission check. The defendant does not address this claim in its initial motion or in its reply brief. The undisputed evidence is that the plaintiff informed the defendant on December 11 or 12, 2000 that she had filed a charge of discrimination; the defendant produced a bonus/commission check for the plaintiff in March 2001 and sent it to Easler; and the defendant received a newly-issued check for the same amount from the defendant in July 2001. Defendant's SMF ¶¶ 88, 95–96, 99; Plaintiff's Responsive SMF ¶¶ 88, 95–96, 99. The plaintiff offers additional evidence, not disputed by the defendant. Plaintiff's SMF ¶¶ 253–57; Defendant's Responsive SMF ¶¶ 253–57. A reasonable factfinder could conclude from this evidence that withholding the check from the plaintiff for four months was an adverse employment action and that the action was causally related to the plaintiff's charge of discrimination, which was directed primarily at Easler and of which the defendant had been notified only three months before the action at issue was taken. *See Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir.1988) (showing of adverse employment action soon after employee engaged in protected activity "is indirect proof of a causal connection between the [action] and the activity because it is strongly suggestive of retaliation"). As was the case with the discrimination claims, once a prima facie showing of retaliation has been made, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision." *Fennell*, 83 F.3d at 535. Here, the defendant has

---

7. The defendant objects to this paragraph on the same basis as its objection to paragraph 268 dealing with the hiring of a new outside sales representative in Portland in November 2001. Defendant's Responsive SMF ¶ 315. The objection is overruled for the reasons stated in my rejection of that objection.

made no attempt to do so in its memoranda of law. It therefore is not entitled to summary judgment with respect to the claim based on this incident.

## B. Americans with Disabilities Act

Counts II and IV of the amended complaint allege discrimination on the basis of a perceived disability. Amended Complaint ¶¶ 46–50, 61–67. The defendant contends that the plaintiff cannot establish a prima facie case under applicable law. Motion at 23–25.

The federal statutes at issue provide:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

The plaintiff must present evidence that would allow a reasonable factfinder to conclude that (i) the defendant regarded her as being disabled, (ii) she was nonetheless qualified to work on the road and (iii) the

defendant took her off the road, in whole or in part, because of the perceived protected disability. *Lessard v. Osram Sylvania, Inc.,* 175 F.3d 193, 197 (1st Cir. 1999). Only those impairments which substantially limit a major life activity are protected.[8] *Id.* The plaintiff suggests that the major life activities at issue here are climbing and walking. Opposition at 24. If the major life activity at issue were working, and if the defendant concluded that the plaintiff was unable to perform "a narrow, single job," *i.e.,* the outside sales position, rather than a class of jobs or a broad range of jobs, its action may not be attacked under the Americans with Disabilities Act ("ADA"). *Lessard,* 175 F.3d at 198. *See also Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). The plaintiff has provided no evidence that would allow a reasonable factfinder to conclude that the defendant perceived her as being unable to perform any job other than the on-the-road portion of her position as an outside sales person at the relevant time. If the major life activity at issue were working, the defendant would accordingly be entitled to summary judgment on this claim.

The regulatory definition of major life activities provides:

Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

29 C.F.R. § 1630.2(i). Courts that have considered climbing as an activity separate from walking in ADA cases have held that climbing is not a major life activity. *Rog-*

---

8. Impairments are not usually disabilities if they are temporary, non-chronic and of short duration, with little or no long-term or permanent impact. *Katz v. City Metal Co.,* 87 F.3d 26, 31 (1st Cir.1996). This means that

the plaintiff's pregnancy did not render her disabled under the ADA, but it does not necessarily mean that the defendant did not regard her as being disabled.

*ers v. International Marine Terminals, Inc.,* 87 F.3d 755, 758 n. 2 (5th Cir.1996); *Piascyk v. City of New Haven,* 64 F.Supp.2d 19, 26 (D.Conn.1999). It is not necessary to resolve this question in this case, however, because the evidence on which the plaintiff relies would not allow a reasonable factfinder to conclude that the defendant perceived her as substantially limited in climbing or walking.

■ The plaintiff cites paragraphs 153–55 of her statement of material facts as support for her assertion that the defendant "perceived that Ms. Davis' pregnancy substantially limited her ability to climb and walk." Opposition at 24. Other than the conclusory assertion that the defendant "regarded Ms. Davis' pregnancy as a medical condition limiting her abilities to climb and walk," Plaintiff's SMF ¶ 154, these paragraphs present, at most, evidence that one customer or potential customer was apologetic upon learning that the plaintiff had had to climb two flights of stairs, *id.* ¶ 153, and that the defendant's corporate designee for deposition personally believed that pregnancy is a medical condition, *id.* ¶ 154. This is far from sufficient evidence to satisfy the first prong of the test for a prima facie case under the ADA.

Because the plaintiff has failed to submit evidence that would allow a reasonable factfinder to conclude that the defendant perceived her as having a disability as that term is defined in the relevant statutes,[9] the defendant is entitled to summary judgment on Counts II and IV of the amended complaint.

**9.** The Maine Human Rights Act defines an "individual with a physical or mental disability" to include one who "[i]s regarded as having a physical or mental disability," 5 M.R.S.A. § 4553(7–B)(C), and a "physical or mental disability" as "any disability, infirmity,

### C. Punitive Damages

The defendant contends that the plaintiff is not entitled to punitive damages on any claims that may survive its motion for summary judgment. Motion at 25–27. The amended complaint seeks punitive damages on all counts. Amended Complaint at 8, 10.

■ Punitive damages are available in connection with Title VII claims when a defendant employer has engaged in unlawful intentional discrimination. 42 U.S.C § 1981a(a)(1). In order to recover, the plaintiff must show that the defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The standard is the same under the Maine Human Rights Act. 5 M.R.S.A. § 4613(2)(B)(8)(c). In order to be liable for punitive damages on a claim of employment discrimination, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). In the context of punitive damages, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Id.* at 545, 119 S.Ct. 2118 (citation and internal quotation marks omitted). The burden of proof on the issue of the employer's good faith efforts is on the employer. *Romano v. U–Haul Int'l,* 233 F.3d 655, 670 (1st Cir.2000).

malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness . . .," *id.* § 4553(7–A).

■ There is no evidence of malice in the summary judgment record. I have determined that the plaintiff may continue to seek relief with respect to two incidents—the modification of her job between August 31, 2000 and the start of her maternity leave in the middle of the following month and the withholding by Easler of her commission or bonus check for four months after the plaintiff filed the first of her charges of discrimination. The plaintiff does not discuss the first incident in connection with her punitive damages claim. Opposition at 18–20. Her statement of material facts includes nothing that would allow a reasonable factfinder to conclude that Easler, or any other employee of the defendant, acted at that time in the face of a perceived risk that the modification was in violation of either federal or state law. Thus, there is no evidence of reckless indifference and the defendant is entitled to summary judgment on the punitive damages claim associated with the first incident of alleged discrimination.

With respect to the second incident, the plaintiff does not contend that there is evidence of malice. Opposition at 10. She emphasizes inconsistencies in the statements of various employees of the defendant with respect to the withholding of the check as evidence of reckless disregard of her rights. *Id.* The defendant contends that, to the extent that Easler's withholding of the check was unlawfully retaliatory, she acted contrary to its good faith efforts to comply with Title VII. Motion at 26–27. The plaintiff responds that there is a disputed issue of material fact "as to [the defendant's] efforts to actively enforce and disseminate its policy" and "as to the train-

ing that Emery provides to its employees pertaining to its anti-discrimination policies." Opposition at 21–22. The latter assertion is not supported by any citation to either party's statement of material facts.[10] In the absence of any such citation, the court cannot conclude that there is any factual dispute on the point. I will accordingly confine my analysis to the plaintiff's first assertion.

■ The plaintiff does not dispute the fact that the defendant had a written non-discrimination policy. *Id.* at 21. She bases her contention that the defendant did not "actively enforce and disseminate" this policy on one paragraph of her response to the defendant's statement of material facts and three paragraphs of her statement of material facts. *Id.* at 22. The paragraph of the defendant's statement of material facts at issue provides:

In addition, Emery annually provides all service centers with a copy of its anti-harassment guidelines for posting in the facility, reinforcing the anti-harassment policies at Emery, reminding employees that they can contact the Corporate Office if the employee feels uncomfortable discussing the matter with his or her supervisor and providing a telephone number for the employee to contact Emery's Vice President of Human Resources and Labor Relations or Vice President or Legal Counsel. **See, Anti–Harassment Guidelines Memorandum, Easler Deposition Exhibit 26.**

Defendant's SMF ¶ 29 (footnote omitted). The plaintiff responded as follows:

---

**10.** Instead of citing to the documents themselves, the plaintiff describes at length what she perceives to be the defendant's wrongful failure to provide the documents in a timely manner. Opposition at 22 & n. 16. She does not request exclusion of those documents as a sanction for the alleged discovery violations. For purposes of the analysis of the plaintiff's request for punitive damages, this discussion by the plaintiff of the procedural history of the case is irrelevant.

Qualify. Ms. Easler's testimony does not support Defendant's assertions that Emery provided a copy of its Anti–Harassment Posting to all employees or that Ms. Davis received a copy of the posting. Ms. Easler never testified that the January 2, 2002 version of the Anti–Harassment posting was provided to Ms. Davis. Ms. Easler mentioned providing Ms. Davis with Emery's Employee Handbook similar to the April 2001 version produced by the Defendant, not its Anti–Harassment Posting. Additionally, Emery's Affirmative Action Plan for Disabled Individuals and Vietnam Era Veterans identifies the Anti–Harassment posting as a required Affirmative Action Posting, not a document provided individually to employees.

Plaintiff's Responsive SMF ¶ 29 (citations and footnote omitted). Nowhere in the paragraph 29 of its statement of material facts and the associated footnote does the defendant contend that it provided a copy of the anti-harassment guidelines to all employees. Whether the plaintiff received a copy at that time is irrelevant to the question whether the defendant engaged in good-faith efforts to comply with Title VII, which can only be assessed on a company-wide basis. *See Romano*, 233 F.3d at 670. Paragraphs 116–18 of the plaintiff's statement of material facts, the remaining citations given in support of her position, also deal with the dissemination of the defendant's written policies to her alone, stating that she did not recall receiving them when she was hired and that she did not consult them until "after she started having issues with Emery's managers' treatment of her." Plaintiff's SMF ¶¶ 116–18. The latter assertion is irrelevant to the defendant's good-faith efforts to comply with Title VII no matter how interpreted. The assertions that the plaintiff does not remember receiving the policies at the time she was hired and that she

at some unidentified time requested and received a copy of the defendant's leave policies, *id.* ¶¶ 116–17, without more, do not raise a question of material fact about the defendant's good-faith efforts. There must, at minimum, be some showing that the plaintiff's experience was typical and that the policies in fact were not disseminated to employees when hired or at other relevant times.

The defendant has submitted undisputed evidence about the substance of its anti-harassment policy. Defendant's SMF ¶¶ 27–29; Plaintiff's Responsive SMF ¶¶ 27–29. The plaintiff denies the other relevant paragraph of the defendant's statement of material facts. Defendant's SMF ¶¶ 26; Plaintiff's Responsive SMF ¶ 26. Again, the denial does not address the specific assertions made in the defendant's statement, which provides, in its entirety: "Emery's policies prohibiting harassment and providing employees with avenues for reporting such harassment are explained in its Code of Business Ethics which Emery provides to every employee and which Ms. Davis received." Defendant's SMF ¶ 26 (citations omitted). The plaintiff's denial begins with the assertion that "[t]he record does not support Defendant's assertion that the 1997 version of the Code of Business Ethics contains Emery's Equal Employment Policy." Plaintiff's Responsive SMF ¶ 26. That is not what the defendant asserted in paragraph 26. The document cited by the defendant in support of paragraph 26 is dated January 2001. Code of Business Ethics, Exh. 26 to Deposition of Marie Lynn Easler (Exh. B to Defendant's SMF). Page 17 of that document does set forth the defendant's policies prohibiting harassment and providing employees with avenues for reporting harassment. The plaintiff apparently means to suggest, Plaintiff's Responsive SMF ¶ 26, that this policy was not in

effect at the time of the first viable incident, between August 31 and mid-September 2000, although it clearly was in effect at the time of the second viable incident, between March and July 2001. That is the only incident to which the existence of the defendant's good faith efforts to comply with Title VII is relevant. I conclude, therefore, that the defendant has submitted undisputed evidence sufficient to establish the affirmative defense with respect to the withholding of the plaintiff's commission or bonus check. The defendant is entitled to summary judgment on the claim for punitive damages in connection with that incident.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED** as to Counts II and IV of the amended complaint; as to any claims for punitive damages; and as to any claims presented in Counts I and III of the amended complaint other than a claim of discrimination arising out of modification of the plaintiff's job between August 31, 2000 and the first day of her maternity leave in September 2000 and a claim of retaliation arising out of the failure to deliver to the plaintiff a check issued in March 2001 for commission and/or bonus; and otherwise **DENIED.**

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument* *before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*